[No. 19131.    En Banc.    May 20, 1925.]

## L. KADOW et al., Appellants, v. WILLIAM PAUL et al., Respondents.[1]

DRAINS (9)—DIKING DISTRICTS—PETITION—SUFFICIENCY. There is a sufficient description in a preliminary petition for the establishment of a diking and drainage improvement district, under Rem. Comp. Stat., §§ 4405, 4407, as amended by Rem. 1923 Sup., §§ 4405, 4407, where the district is designated by metes and bounds and the "location, route and termini" of the proposed dikes and drains is shown by an attached map.

SAME (5, 6)—PROCEEDINGS FOR ESTABLISHMENT—NOTICE OF HEARING—SUFFICIENCY. A notice of hearing upon a proposed diking and drainage improvement district, under Rem. Comp. Stat., § 4414, requiring three publications, is not defective by reason of a fourth publication where no one was injured and all interested parties appeared on the day set.

SAME (7)—ESTABLISHMENT OF DISTRICT—PROCEEDINGS OF BOARD—JURISDICTION. The board of county commissioners did not lose jurisdiction of proceedings to establish a diking and drainage improvement district at an adjourned meeting, where at the hearing a motion was carried that the improvement remain as at present and the meeting adjourned until subsequent dates, at which times the matter was given further consideration, and a final order entered.

SAME (9)—DIKING DISTRICTS—PETITION—PLANS. Plans for a proposed diking and drainage improvement district sufficiently comply with the statutory requirements as to an outlet, where they provide for the construction of a dam and a pumping system as an outlet for water after the dam is constructed.

SAME (5, 9)—ESTABLISHMENT—CONDITIONS PRECEDENT—OBSTRUCTION OF NAVIGABLE LAKE. Such plans are not defective in that the

[1]Reported in 236 Pac. 90.

consent of the proper Federal authorities had not been obtained to damming a stream in which the tide ebbs and flows.

SAME (11)—ESTABLISHMENT—PLAN OF CONSTRUCTION—CHANGE IN BOUNDARIES OF DISTRICT—DAMAGES. Rem. Comp. Stat., § 4415, as amended by Rem. 1923 Sup., § 4415, authorizes the county commissioners, in establishing a proposed diking and drainage improvement district, to change the boundaries, and it cannot be claimed that a deduction of the acreage would increase the "damages" as defined by § 4406.

SAME (8)—PROCEEDINGS—SALE OF BONDS—TIME FOR SALE—STATUTES. Under Rem. Comp. Stat., § 4423, making provision as to the time for the issuance of bonds for a diking and drainage improvement district but none for the time when they shall be offered for sale, it cannot be objected that a sale of bonds before their issuance is premature, nor presumed that the commissioners will not comply with the laws as to their issuance.

SAME (7)—ESTABLISHMENT OF DISTRICT—PROCEEDINGS—EVIDENCE. In the absence of fraud or a showing of arbitrariness in the exercise of discretion in establishing a diking and drainage improvement district, evidence not tending to prove that they had been arbitrary is properly excluded.

COUNTIES (68)—LOAN OF CREDIT—DRAINS—DAMAGES—TEMPORARY PAYMENT OF CLAIMS. Rem. Comp. Stat., § 4420, providing that certain preliminary claims for damages from the establishment of a diking and drainage improvement district may be paid temporarily out of a current expense fund, does not violate Const., Art. 8, § 7, prohibiting a county from loaning its credit.

DRAINS (14)—ASSESSMENTS—PRIORITY OF LIEN—STATUTES. Rem. Comp. Stat., § 4435, as amended by Rem. 1923 Sup., § 4435, providing that assessments for diking improvements shall be paramount liens to all others, except local improvement assessments and general taxes, is within the power of the legislation to create liens for general or local assessments superior to existing mortgage liens.

SAME (20) — SUPPLEMENT ASSESSMENTS — STATUTES — VALIDITY. Rem. Comp. Stat., § 4439, as amended by Rem. 1923 Sup., § 4439, providing for a supplemental assessment, and Rem. Comp. Stat., § 4422, as amended by Rem. 1923 Sup., § 4422, providing that lands assessed for a diking and drainage improvement district shall remain liable for the costs until they are fully paid, are not objectionable because providing a general and a secondary liability.

SAME (16, 16-1)—ASSESSMENTS—LIEN — NATURE OF OBLIGATION. All property in a diking and drainage improvement district is subject to a general lien for the cost, not exceeding maximum benefits on either the original or supplemental assessments.

Appeal from a judgment of the superior court for Clarke county, Smith, J., entered June 26, 1924, dismissing an action for equitable relief, tried to the court. Affirmed.

*Angell, Fisher & Sabin* and *Crass & Hardin,* for appellants.

*Miller, Wilkinson & Miller,* for respondents.

*Fisk & McCarthy* and *C. E. Lombardi, amici curiae.*

MAIN, J.—This action was brought by the owners of certain lands in diking improvement district No. 3 of Clarke county, of this state, against the commissioners of that county, the county engineer, and the supervisors of the district and the engineer specially employed. The relief asked was a decree adjudging that the proceedings had in the organization of the district were void and that certain portions of the statute under which the district organized were unconstitutional, and restraining the defendants from taking any steps looking to the construction of the proposed improvement or sale of bonds to finance the same. After a trial upon the merits, the action was dismissed, and the plaintiffs appeal.

The proposed improvement was sought to be made under ch. VI, title XXVII, Rem. 1923 Sup., as amended by ch. 46 of the Laws of 1923, p. 108.

Section 4407, Rem. Comp. Stat. [P. C. § 1945-59], as amended, provides that the improvement shall be initiated by a petition addressed to the board of county commissioners of the county in which the proposed improvement is located, signed by four or more owners of property which will be benefited thereby. The petition must set forth the necessity for the improvement and "shall describe with reasonable certainty the location, route and terminal thereof."

Section 4408 [P. C. § 1945-60], provides that, upon the filing of the petition and the approval of the bond which must be given, a copy of the petition shall be given to the county engineer, who shall then proceed to view the line and location of the proposed improvement and the property to be benefited thereby and determine whether the improvement is, in his opinion, necessary or will be conducive to public health, convenience or welfare, and also whether in his opinion the location and route described are the best for the improvement.

Section 4410 [P. C. § 1945-61], provides that, if the report of the county engineer shall be against the improvement, the board of county commissioners shall dismiss the petition at the cost of the petitioners.

Section 4411 [P. C. § 1945-62], as amended, provides that, if the report of the county engineer shall be favorable to the improvement, the board of commissioners shall give the improvement district a number and shall cause to be entered on its journal an order directing the county engineer to go upon the lines described in the petition, or as changed by him in his report, survey, take levels, etc., and make such investigation as he may deem necessary, and make a report, profile and plat of the same. He is required also to make an estimate of the cost of construction of the system, itemized so as to be reasonably specific as to the various parts thereof. It is provided that the estimate of the cost shall be held to be preliminary only and shall not be binding as a limit on the amount that may be expended in constructing the system.

Section 4412 [P. C. § 1945-63], as amended, provides that the board shall also, by order entered on the journal, direct the county engineer to make and return an estimate of all the property that will be damaged or both damaged and benefited by the proposed improve-

ment, and to estimate and report the total number of acres that will be benefited.

Section 4414 [P. C. § 1945-65], provides that, upon the filing of the report of the county engineer, the board of county commissioners shall fix a date for a hearing on such report, and the clerk of the board is required to give notice thereof by publication "for at least once a week for three successive weeks, in the official newspaper of the county."

On the date fixed by the notice, a hearing shall be had before the board of county commissioners. Section 4415 [P. C. § 1945-66], as amended, provides that at the hearing the board shall hear all pertinent evidence, including any evidence offered concerning the probable cost of the system and the probable benefits to accrue therefrom, and "may change, add to or modify the plans for such system of improvement and the boundaries of the improvement district, and change the estimate of damages and benefits in any case, and may review, change and modify any of the findings and estimates of the county engineer." It is further provided that if at the hearing the board shall find that the plan of the improvement proposed or as modified by them at said hearing is feasible and economical, and that the benefits derived therefrom by the lands within the proposed district exceed the cost thereof, it shall make its written findings to that effect and shall pass a resolution establishing the district, describing the boundaries thereof and fixing the plans for the improvement.

Section 4416 [P. C. § 1945-67], provides that in case any owner of property to be damaged by the proposed improvement shall agree to accept the damages estimated by the engineer or as fixed by the board of county commissioners, the board of county commissioners may, under the conditions provided in this section,

cause a warrant to be drawn upon the current expense fund of the county for the amount of the damages or the amount of excess damage over profits, in favor of the property owner that accepts the damages estimated by the engineer or as fixed by the board.

Section 4422 [P. C. § 1945-73], as amended, provides that "the cost of improvement shall be paid by assessment upon the property benefited, said assessment to be levied and apportioned as hereinafter prescribed, and all the lands included within the boundaries of the district and assessed for the improvement shall be and remain liable for the costs of the improvement until the same are fully paid."

Section 4435 [P. C. § 1945-85], as amended, provides that, upon filing the schedule of the apportionment, the board of commissioners shall fix the time and place for a hearing thereon.

In the sections of the act referred to the full provisions thereof have not been set out. There has been made only such reference as seemed necessary for a background for the consideration of the case presented. The act goes into detail as to the manner in which the district shall be organized, the improvement made, and the costs thereof provided for. One method of payment is that of issuing of bonds, and that was the method adopted in the present case.

The purpose of the improvement was to reclaim lands on the east bank of the Columbia river which were swampy and subject to overflow at times of high water. It also had for its purpose the draining of lakes Shillapoo and Vancouver, as originally contemplated, both of those lakes being shallow water.

The first petition for the organization of the district was presented to the board of county commissioners in 1919, and as then contemplated comprised approximately 6,500 acres of land. After the organization of

the district proceeded to the point where bonds were ready to be sold, it was permitted to remain dormant until June 26, 1923, when a second petition was filed with the board of county commissioners praying for the establishment of the district. This petition was presented to the county commissioners, and after the steps required by the statute had been taken, the commissioners on October 30, 1923, made an order establishing the district, defining its boundaries, and providing that it should be known as diking district No. 3 of Clarke county. The district as established comprises about 5,100 acres of land. In the order establishing the district it was provided that the project should be financed by the issuance of bonds. In order to carry out the improvement the commissioners advertised for the letting of the contract for the improvement and for the sale of the bonds of the district. On the day before the date set for the sale of the bonds and the letting of the contract, the appellants began the present action for the purposes above stated, and which resulted as indicated.

The questions presented upon the appeal are of two classes, one going to alleged irregularities of the proceedings in the formation of the district, and the other based upon the claimed unconstitutionality of certain provisions of the act under which the improvement is projected.

The first point is that the petition which initiated the improvement was not sufficient, in that it did not describe the route and termini of the proposed system or give any description of the proposed dikes and drains. The description in the petition is by metes and bounds, and it is then provided that "the location, route and termini being shown on the attached map marked Exhibit A". The statute (§ 4407, as amended)

18—134 WASH.

provides that the petition "shall describe with reasonable certainty the location, route and termini thereof." This petition is only preliminary. It is the first step. After it has been filed, as will appear from the sections of the statute above referred to, it is submitted to the county engineer, whose report goes more into detail and makes a comprehensive survey and report as to the whole matter. It is after this report that a hearing is had. The petition described the proposed improvement with as much detail as was possible at that state of the proceeding and was sufficient under the statute.

The second point is that the notice of the hearing upon the proposed improvement was defective. Section 4414 provides for notice "by publication for at least once a week for three successive weeks," the last publication of which "shall be not less than seven nor more than fourteen days before the date of said hearing." The notice was published four times, viz.: On March 11, 18, 25 and April 1. The hearing was on April 8. The first publication of the notice was twenty-eight days before the hearing. The statute requires only publication for three successive weeks. There is no showing that any one was injured by the publication of the notice on the fourth week. On the date set the parties interested appeared, some opposing and some supporting the proposed improvement. In principle the case of *Rands v. Clarke County*, 79 Wash. 152, 139 Pac. 1090, supports the sufficiency of the notice. It was there said:

"This court, however, early held that requirements of a statute providing for the giving of notices of an election, either general or special, were directory rather than mandatory, unless the statute itself declares that the election shall be void if the statutory requirements are not strictly observed, or the court can

see from the record that the result of the election might have been different had there been a strict compliance with the statutory requirements."

The purpose of the statute was to give notice. The publication accomplished this purpose, and even though it did not strictly comply with the statute, it nevertheless was sufficient in the absence of a showing of any prejudice.

The third point is that the order of October 30, 1923, which established the district now in question, was illegal and void for the reason that the board of county commissioners at the time had lost jurisdiction of the matter. The hearing on the petition for the enlargement of the district, which was the second petition, was held on July 23, 1923, at which time the commissioners heard both the proponents and the opponents of the proposed district and took the matter under advisement. Thereafter, on October 15, 1923, the matter was considered by the commissioners and a motion made and carried that diking improvement district No. 3 remain as at present. At this meeting the board adjourned to meet on October 20, 1923. On the latter date, as the minutes show, matters pertaining to diking district No. 3 were again discussed. The board adjourned this meeting to meet on October 30, 1923. On the latter date the board again considered the matter and entered a formal order such as the statute contemplates, directing the improvement. The argument is that, after passing the motion of October 15; the commissioners had no further jurisdiction. The clerk of the board testified that she was not present at the time and that it was the practice when she was not present for the president of the board to make memoranda of the proceedings which she subsequently put into proper form and caused to be recorded in the journal. The meeting of October 30 was an adjourned meeting from

the regular meeting of October 15. In *Olympian-Tribune Pub. Co. v. Byrne*, 28 Wash. 79, 68 Pac. 335, the court approved this rule:

"A board of county commissioners has the same power as any court to amend its records according to the truth, and upon such evidence as the board, in its discretion, may deem sufficient."

In 33 C. J., p. 1190, with reference to an order or memorandum for judgment, it is said:

"It must appear that that which is offered as the record of a judgment is really such, and not an order for a judgment or mere memoranda from which the judgment was to be drawn."

Since the final order was made at an adjourned meeting of the regular meeting of the board when the first motion was passed, it seems to us that it would be too technical to hold that the board had lost jurisdiction and therefore did not have the right to consider the matter on October 30 when it entered its formal order.

The fourth point is that the plans for the improvement did not provide for an outlet as required by the statute, inasmuch as it is sought to make use of what is referred to as Lake river by placing a dam across that stream. Lake river is more properly designated as a slough which is an outlet for the waters of Vancouver lake. The tide in it rises and falls, and at times of high water booms of logs are carried out through it. When the tide is out and it is not a period when a freshet is occurring, the logs of the booms rest in the mud. Whether this is a navigable stream in the commercial sense we will not here determine, but assume for the purpose of this discussion that it is. It is a stream wholly within the boundaries of this state. It is said that, until a permit is obtained from the proper Federal authorities permitting the damming of the stream, the improvement should not be per-

mitted to proceed. As an outlet for the waters after the dam is constructed, the plans provide for a pumping system. It may be, in carrying out the improvement, that ultimately it may become necessary to place a dam across Lake river not far from where the waters of Vancouver lake flow into it. In *In re Westlake Avenue*, 66 Wash. 277, 119 Pac. 798, after the reviewing of the authorities, it was said:

"From authorities cited, and the history of Congressional legislation, it is manifest that the national policy as to navigable waters lying wholly within a state has at all times been that the state, or its authorized representatives, shall, in the first instance, select locations and adopt plans for bridges, but that prior to actual construction, and for the protection of navigation, such locations and plans shall be approved by the secretary of war."

It is further said that:

"It is not to be presumed that the chief of engineers or the secretary of war will arbitrarily refuse to approve any plans whatever. The only duty imposed upon them is to see that no unnecessary interference with navigation is caused by the new bridge when erected."

The organization of the district was not defective in that it had not obtained the consent of the chief of engineers and the secretary of war prior to the time that the contract for the improvement was to be let and the bonds offered for sale. As stated, the outlet which was to take care of seepage and drainage waters was a pumping plant.

The fifth point is that the commissioners unlawfully changed the boundaries of the proposed district and the system of improvement, resulting in additional damage without the publication of a notice and hearing. Section 4415 [P. C. § 1945-66], as amended, provides that the commissioners "may change, add to or

modify the plans for such system of improvement and the boundaries of the improvement district." It is claimed that the change in the boundaries would cause additional damage in that it would make a reduced acreage pay the cost of the improvement. The word "damages" is defined in § 4406 [P. C. § 1945-58], "to include the value of the property taken and injury to property not taken, or either, as the case may be." The commissioners, having jurisdiction at the time of making the change, were acting within the confines of the law.

The sixth point is that the attempted sale of the bonds is premature. The act does not make any provision as to the time when the bonds shall be offered for sale. Section 4423 [P. C. § 1945-74], covers the matter of the sale of bonds or warrants, as the case may be. In this case it is bonds. The manner of the sale is there provided for, and it is further provided that bonds which may be issued under the provisions of the act "or such portions thereof as shall remain unsold or undisposed of may be issued to the contractor constructing the improvement or any part thereof in payment therefor, and in case the improvement or any part thereof shall be constructed by the board of supervisors as in this act provided, may be issued in payment for work, labor and material performed and furnished therefor." Section 4422, *supra*, as amended, provides that the bonds shall not be issued until after the expiration of thirty days from the first publication of notice given by the treasurer as provided in § 4435 [P. C. § 1945-85], and shall not be issued in any amount in excess of that portion of the assessment remaining unpaid after the expiration of such thirty-day period. Section 4435, as amended, provides that, upon the filing of the apportionment or assessment roll, the commissioners shall fix a time and place for hearing. It

also provides for notice. It thus appears that there is no provision in the statute as to when the bonds shall be offered for sale, but there is a provision with reference to their issuance. It further appears that the cost of the improvement is to be provided for by the sale of bonds, and these may be issued to the contractor, or for labor and material if the work be done under the direction of the board. As a practical matter, the improvement could not go forward unless it be first ascertained whether the bonds are salable, and inasmuch as there is no provision for the offering of them for sale, it cannot be held that the offer was being made prematurely. It cannot be assumed that the commissioners will not follow the provisions of the law as to their issuance.

The seventh point is that the trial court erred in rejecting testimony which was offered upon the hearing. The purpose of the testimony, it is stated, was to show that the commissioners had acted arbitrarily. Where the commissioners have discretionary powers their acts will not be reviewed by the courts in the absence of a showing of fraud or arbitrariness. In this case there is no claim of fraud. The record shows that the commissioners gave careful consideration to the whole matter and it is apparent that they deliberately exercised their discretion in establishing the district. The evidence offered and rejected did not tend to prove that the commissioners had been arbitrary, and the ruling of the trial court thereon was correct.

The eighth point is that § 4420 [P. C. § 1945-71], is unconstitutional because it provides that certain preliminary claims for damages may be paid temporarily out of the current expense fund of the county. In support of this position § 7, of art. 8, of the constitution is relied on, which provides that no county shall loan its credit "to or in aid of any individual, association,

company or corporation . . ." In *Foster v. Commissioners of Cowlitz County,* 100 Wash. 502, 171 Pac. 539, the constitutionality of this act as it stood prior to the 1923 amendments was sustained, and this question was there raised and passed upon. It was there said:

"Counsel proceed upon the theory that the county is giving services, and therefore, in effect, giving 'money or property' in aid of the improvement district, in that the county officers, as the law provides, render a considerable service in the organization of the district, the construction of the improvement, and in the administration of the affairs of the district after its organization, without compensation to the county. We assume, for argument's sake only, that this would be in violation of art. 8, § 7, of our constitution, if a diking improvement district such as is contemplated by this law is an 'association, company, or corporation' of the kind this constitutional prohibition contemplates that the county shall not aid. . . . We conclude that the statute in no way violates the provisions of art. 8, § 7, of our constitution."

The ninth point is that § 4435, *supra,* as amended, is unconstitutional because it provides that the assessments for the diking improvement shall be liens upon the property assessed and shall be paramount to all liens except liens assessed for local improvements and except liens for general taxes. The argument is that this makes the liens superior to mortgage liens existing on the land prior to the improvement and for that reason it is unconstitutional. In *Seattle v. Hill,* 14 Wash. 487, 45 Pac. 17, 35 L. R. A. 372, it was held that the lien of an assessment for a local improvement is superior to a prior mortgage on the property, under the statute there under consideration. In *Carstens & Earles v Seattle,* 84 Wash. 88, 146 Pac. 381, Ann. Cas. 1917A 1070, it was said:

"That the legislature may create a lien for taxes, whether such taxes be general or by local assessment, superior to all other liens regardless of priority of time, is settled beyond controversy."

The tenth point is that § 4439 [P. C. § 1945-86], as amended, which provides for a supplemental assessment in certain cases is unconstitutional. In *Hagar v. Reclamation District No. 108,* 111 U. S. 701, it was said:

"Whenever a local improvement is authorized, it is for the legislature to prescribe the way in which the means to meet its cost shall be raised, whether by general taxation, or by laying the burden upon the district specially benefited by the expenditure."

In *Orr v. Allen,* 245 Fed. 486, it was said:

"We see no valid objection to that part of section 46 providing that, when a landowner has paid the entire assessment in full upon an appraisement of benefits to his property, he may nevertheless be assessed for purposes of maintenance, or that part of section 47 providing for additional levies as may be necessary to pay the principal and interest of bonds."

It thus appears that the legislature had the power to provide for supplemental assessments.

The eleventh point is that that portion of § 4422 [P. C. § 1945-73], as amended, which provides that "all the lands included within the boundaries of the district and assessed for the improvement shall be and remain liable for the costs of the improvement until the same are fully paid" is unconstitutional. The language quoted is the same as it appeared in the irrigation statute which was under consideration in the case of *State ex rel. Clancy v. Columbia Irrigation Dist.,* 121 Wash. 79, 208 Pac. 27. In that case the validity of the statute was sustained. There can be no difference between the two cases. Diking districts as well as irrigation districts are public improvements. The cost in

each is to be assessed against the property benefited. Of course, there is a difference in the details as to the procedure. The obligation created by the statute is a general and not a specific lien against all the property therein. In *American Falls Reservoir Dist. v. Thrall*, 39 Idaho 105, 228 Pac. 236, it was said:

"From the foregoing provisions, we think that it was the intention of the legislature in the enactment of these various statutes to make the obligations of an irrigation district a general and not a specific lien against all the property of the district."

The primary fund out of which the cost of the improvement shall be made is derived from assessments upon the property benefited. As a general obligation or secondary liability, all the lands in the district are liable for the cost of the improvement. So long as the benefits to the entire district are greater than the amount of liability imposed, there can be no constitutional objection to the providing that there shall exist the general or secondary liability. In *Holzman v. Spokane*, 91 Wash. 418, 157 Pac. 1086, it is said:

"The extent to which taxes, whether general or special, shall become liens upon property and the relative rank of such liens is purely a question of legislative will."

In *Union Trust Co. v. Carnhope Irrigation Dist.*, 132 Wash. 538, 232 Pac. 341, it was distinctly held that as to an irrigation district the property at no time could be assessed in excess of the accruing of benefits. Applying the rule of that case and the *Clancy* case, the result would be that all the property within the district is subject to a general lien, but that at no time, either upon the original or supplemental assessments, can there be a levy made which will exceed the maximum benefits.

There are some other points mentioned in the briefs, but we think that these have all been covered by what

has been hereinbefore said and it would unnecessarily prolong this opinion to consider them here in detail.

The judgment will be affirmed.

All concur.