[No. 21329.   Department Two.   October 3, 1928.]

CATHRYN EUNICE PLEBUCK et al., *Appellants*, v. FRANK G. BARNES et al., *Respondents*.[1]

[1]Reported in 270 Pac. 823.

222

*Atwell & Moore,* for appellants.
*Miller, Wilkinson & Miller,* for respondents.

ASKREN, J.—Prior to her death in 1921, Eunice T. Olson was the owner of certain farm lands in Cowlitz county. These descended in one-ninth interests to her heirs. Charles H. Olson, one of her sons, became the executor of the estate. Several months later, the respondent Barnes entered into an agreement with Charles H. Olson for the purchase of the farm, went into possession, and has farmed the place since that time. The purchase, however, was not completed due to the refusal of some of the heirs to consent to the contract.

In January, 1925, the respondent brought an action against three of the heirs praying for a decree quieting title as to them. In evident compromise of that action, Charles H. Olson, Clara Louise Davolt, Laura B. Olson and Neal Olson executed deeds to their interests in the land in question, the first two owning one-ninth and the latter two one-eighteenth each. This gave the respondents title ownership of three-ninths of the property.

This action was then instituted by the appellants, who, as owners of five-ninths of the property, sought possession. The respondents claimed by answer that they were the owners of three-ninths, and that an

action was pending against the trustee of Amelia Olson for another one-ninth. Respondents set up that they were co-tenants of the land, and alleged payments of taxes, assessments and repairs. They also tendered an accounting of receipts and asked for judgment against the interest of each appellant for a proportionate share of taxes, assessments and expenses in excess of the income.

The court found that the parties were co-tenants, that the amounts advanced by respondents exceeded the income, and gave respondents judgment against each of the appellants in the sum of $1,065.99, and established a lien therefor.

Upon appeal, it is asserted by appellants that respondents were mere trespassers on the land, and that any payments of taxes and assessments by them were voluntary and therefore uncollectible from appellants. This argument is predicated upon the idea that Barnes, when he made the contract and entered into possession, knew that he had an invalid contract for its purchase, and consequently had no right to go into or maintain possession. But this view is untenable. Charles H. Olson was executor of the estate. The evidence discloses that Barnes understood that he dealt with him as executor as well as in his own individual capacity, and that it was after possession was taken and moneys advanced that it became apparent that certain of the heirs disclaimed any right to be bound by the contract, and refused to sign deeds thereto.

Under these circumstances, it is, of course, clear that Barnes was not a trespasser. He entered into possession in good faith. While he would be unable to enforce his contract against those heirs who did not consent to the contract or ratify it, he could never-

theless insist upon specific performance from those who did.

Before this suit was commenced, it had been legally established in the same court that Barnes' possession was not that of a trespasser. Charles H. Olson as executor brought an action in November, 1923, alleging the taking possession of the lands by Barnes and asking for a writ of restitution upon behalf of the estate. Barnes answered the complaint, setting up his possession under the contract of purchase we have heretofore referred to, and after trial the court made findings of fact that Barnes held under an agreement with Charles H. Olson, and that Olson was estopped to maintain the action, and dismissed the same.

Respondents assert that, since the trial court in that action held Olson estopped to apply for a writ of restitution, it also bound the appellants, since an executor brings suit upon behalf of the estate and its heirs. However, a perusal of the pleadings, findings, conclusions of law and judgment of dismissal in that action indicates that, although the suit was brought by the executor as such, the court merely held Charles H. Olson as an individual to be estopped. We therefore hold that the appellants had the right to bring this action testing the validity of Barnes' possession, and turn immediately to the question of that possession and its rights.

Barnes' possession, he subsequently having received a deed from Charles H. Olson in compromise of the later suit brought by Barnes therefor, was at all times as an owner of at least the interest of Charles H. Olson. We think it may also be said that, as a matter of law, the deeds subsequently received by him from two other of the heirs who he claimed were bound by the original transaction were such as to re-

late back to the time of Barnes' possession and make them at that time a valid purchase of at least a three-ninths interest.

Some contention is made by appellants that, since Barnes was attempting to purchase the interests of all of the heirs, his right must fail. But it is no defense to an action for specific performance of a contract for the sale of certain real estate that the vendor does not own or cannot convey the whole title. It is sufficient for the vendee to maintain his action to assert that, while the vendor cannot convey such title as was contracted for, yet he (the vendee) is willing to accept the title which the vendor possesses. The reasons for the rule are well. stated in *Melin v. Wooley,* 103 Minn. 498, 115 N. W. 654, 22 L. R. A., (N. S.) 595, an action where a vendor refused to be bound by his contract because his co-tenant repudiated it. The court held that this did not relieve the vendor from delivering title to his interest in the land, even though it was but half what the purchaser had contracted for. The court quoted with approval Waterman, Specific Performance, p. 701, § 499, as follows:

"The rule as to the purchaser is that, though he cannot have a partial interest forced upon him, yet if he entered into the contract in ignorance of the vendor's incapacity to give him the whole, and chooses afterward to take as much as he can get, he has generally, . . . a right to insist on that, with compensation for the defect; . . . There is nothing in the general rule of which the vendor can complain. It is his own fault if he has assumed obligations which he cannot fulfill. The vendor is not compelled to convey anything he did not agree to convey; and the vendee pays for what he gets, according to the rate established by the agreement."

Barnes' possession, then, was not illegal, but as a co-tenant. It logically follows that he is entitled to

proportionate refund from the other co-tenants for advances made for taxes and assessments.

Some contention is made that respondents should not have paid certain drainage assessments. The point apparently made is that the enlargement of a drainage district amounts to a capital investment. The point is not argued at length, nor has any authority been cited to support the claim. In *Kadow v. Paul,* 134 Wash. 539, 236 Pac. 90, we held that such assessments are in the nature of taxes. We think that decisive of the point here urged.

Other questions raised do not require extended argument.

Judgment affirmed.

FULLERTON, C. J., FRENCH, HOLCOMB, and MAIN, JJ., concur.