[No. 24279. Department Two. November 25, 1932.]

PAUL J. KRUESEL, *Individually and as Treasurer of Spokane County, Appellant,* v. ALVIN H. COLLIN *et al., Respondents.*[1]

[1]Reported in 16 P. (2d) 442.

234

*Chas. W. Greenough* and *A. O. Colburn,* for appellant.

*Graves, Kizer & Graves,* for respondents.

MAIN, J.—This action was brought by Paul J. Kruesel, individually and as treasurer of Spokane county, to restrain the board of county commissioners of that county from issuing and selling bonds of the county for the purpose of paying the warrant indebtedness thereof created for emergency indigent relief. The cause was tried to the court without a jury, and resulted in findings of fact from which the court concluded that the proposed bond issue was in all respects legal and valid. From the judgment entered dismissing the action, the plaintiff appeals.

In October, 1930, the board of county commissioners budgeted a certain sum for indigent relief for the ensuing year. This sum proved to be insufficient, and from time to time the commissioners passed resolutions declaring an emergency which could not have

been reasonably foreseen, and drew warrants upon the current expense fund to meet emergency indigent relief. The same thing happened with reference to the budget adopted in 1931. After drawing from the current expense fund, as indicated, a sum upward of two hundred thousand dollars and issuing warrants therefor, that fund was depleted, and, to meet further emergency relief, the commissioners issued two hundred thousand dollars of warrants and sold them to the Spokane & Eastern Trust Company.

When the two hundred thousand dollars thus obtained was exhausted, or nearly so, the commissioners ordered the issue and sale of bonds to take care of the emergency indebtedness theretofore created, without a submission of the matter to a vote of the people. It is the validity of this proposed bond issue which is here in question. The indebtedness created, up to the time of the proposed bond issue, was in approximately the sum of four hundred fifty thousand dollars, and the proposed bond issue is for that amount.

It is first contended that the proposed bond issue is invalid because there was no emergency which justified the creation of the indebtedness which the bond issue was to cover. In 1923, the legislature passed an act entitled,

"An Act providing for a budget system for making and controlling county estimates, tax levies and expenditures and providing penalties for the violation thereof,"

which is generally referred to as the county budget law. Chapter 164, Laws of 1923, p. 523 (Rem. 1927 Sup., § 3997-1 *et seq.*). Section 6 of this act provides for two classes of emergency. For one, where the amount budgeted for a particular purpose is exceeded, there must be notice and hearing, and for the other, such as an emergency created by fire, flood, explosion,

etc., the amount budgeted in a particular fund may be exceeded without notice or hearing.

As to the first class, it is provided that, when a public emergency, other than such as are specifically described hereinafter and which could "not reasonably have been foreseen" at the time of making the budget, shall require the expenditure of money not provided for in the budget, the county commissioners, by unanimous vote, shall adopt and enter upon their minutes a resolution stating the facts constituting the emergency and the estimated amount of money required to meet such emergency, and shall give notice of a hearing to be had upon such resolution, as provided therein.

Whether the commissioners in 1930 and 1931, when they prepared the budgets for those respective years, should have reasonably foreseen that there would be a greater demand upon the indigent relief fund than was provided for in the budget, presents a question of fact which involves an element of discretion, and, where the board has found the fact and the trial court has affirmed the finding, this court will not disturb such finding, unless the evidence clearly preponderates against it, or it appears that the board acted arbitrarily or capriciously. *State ex rel. Porter v. Superior Court,* 145 Wash. 551, 261 Pac. 90; *Rummens v. Evans,* 168 Wash. 527, 13 P. (2d) 26.

In the record in the present case, we find nothing which would justify this court in overturning the findings of the board which were approved by the trial court, and nothing which would indicate that the commissioners acted arbitrarily or capriciously. In fact, they gave diligent consideration to the question, held hearings at which there was a large number of taxpayers present, and, after such hearings, proceeded in the manner which, under the circumstances, appeared best and most reasonable to them. They were

confronted with the question of whether an increased tax levy would not produce less revenue than a tax fixed at a lower rate. Each time that an emergency was declared and the amount budgeted was exceeded, a resolution was passed, notice was given and a hearing held. The statutory requirements were satisfied, and, as indicated, the record presents no reason why this court should disturb the judgment of the commissioners and the superior court.

It is next contended that the commissioners had no right to draw warrants upon the current expense fund for indigent relief, and that such warrants were void and could not support a bond issue to refund them. Section 2 of the budget law provides for five general classes for which appropriations must be made in the annual budget, one of which is "maintenance and operation." The current expense fund is a subdivision of this class, as is also indigent relief. Section 5 of the act provides that, upon a resolution formally adopted by the county commissioners and entered upon the minutes, "transfers or revisions within the general class of 'salaries and wages' and of 'maintenance and operation' may be made." The transfers made from the current expense fund to that of indigent relief were made in strict compliance with the provisions of the statute, and they were entirely legal and proper.

It is next contended that there was no authority for the county to borrow money by the issuance of warrants, as was done with the Spokane & Eastern Trust Company when two hundred thousand dollars was so obtained. In this connection, it is said that the statutory provisions relative to what shall be done when a county needs to make temporary loans were not complied with, and that Rem. Comp. Stat., § 4086, which provides that "no warrants shall be issued for

a greater amount than five hundred dollars,'' was not complied with, because the warrants issued to the Spokane & Eastern Trust Company were in units of a sum greater than five hundred dollars.

Whether the county, through its board of commissioners, had a right to issue and sell the bonds direct to the bank in units of greater than five hundred dollars, is a question which we shall pass without discussing or deciding. The county received the money and applied it beneficially to an authorized purpose. Under such circumstances, an action would lie to recover the money, even though the county had exceeded its authority in obtaining it. *Soderberg v. King County*, 15 Wash. 194, 45 Pac. 785, 55 Am. St. 878, 33 L. R. A. 670; *Pacific Coal & Lum. Co. v. Pierce County*, 133 Wash. 278, 233 Pac. 953.

If an action would lie to recover the money, even though the county exceeded its authority, it would necessarily follow that a bond issue for the purpose of taking care of the indebtedness created when the county received the money would not be defective or invalid. In *Butts County v. Jackson Banking Co.*, 129 Ga. 801, 60 S. E. 149, 15 L. R. A. (N. S.) 569, 121 Am. St. 244, by the supreme court of Georgia, it was said:

"It is very generally held that counties and municipal corporations are liable for money had and received by them and applied beneficially to their authorized objects, although the contract by which the money was obtained was unauthorized by law. *Allen v. LaFayette,* 89 Ala. 641 [8 South. 30, 9 L. R. A. 497]; *Salt Lake City v. Hollister,* 118 U. S. 256 [6 Sup. Ct. 1055, 30 L. Ed. 176]; *Parkersburg v. Brown,* 106 U. S. 487 [1 Sup. Ct. 442, 27 L. Ed. 238]; Dill. Mun. Cor. § 126; 20 Am. & Eng. Enc. L. (2d ed.) 1158; *Luther v. Wheeler,* 73 S. C. 83 [52 S. E. 874, 4 L. R. A. (N. S.) 746]. The principle of liability rests upon the theory

that the obligation implied by the law to pay does not originate in the unlawful contract, but arises from considerations outside of it. In ascertaining the quantum of liability the amount of the loan is not taken into account, but the measure of recovery is the money actually applied to lawful municipal or county uses. The obligation to account for money received by the county, and actually devoted to lawful purposes, rests upon the broad principle of common honesty, which will not permit the county to retain the benefit of money lawfully applied to its use, and at its request, simply because the county lacked the power to borrow the money.''

█ It is next contended that what is called the county's joint enterprise with the city was illegal. In support of this contention, no authorities are cited, and little argument is made. The facts upon which the contention is predicated are these: During the winter of 1930 and 1931, the county and city of Spokane jointly employed indigent persons for two days a week and paid for their labor at a reduced rate, the city paying its portion of the expense in cash and the county paying its portion in scrip or orders upon certain merchants of Spokane to deliver provisions and supplies in a given amount in each case. This arrangement relieved the county from the necessity of supporting these men so employed, and did it at half what the county would have been compelled to do for their support had the city not paid half of the wage. It is impossible for us to see how this arrangement between the city and the county could in any way be prejudicial to the interests of the county or affect the validity of the proposed bond issue.

█ It is next contended that the proposed bond issue will create an indebtedness of the county beyond the one and one-half per cent debt limit, without a vote

240

of the people. This precise question has been considered and answered adversely to appellant's contention in the recent case of *Rummens v. Evans*, 168 Wash. 527, 13 P. (2d) 26, and further elaboration is not here necessary.

Finally, it is contended that the bonds are invalid because the notice of the sale thereof was defective. The statute (Rem. 1927 Sup., § 5583-3) provides that notice of sale "shall be published once a week for four consecutive weeks in the official newspaper." The official newspaper was the Weekly Chronicle. The first and second publications were made in the Daily Chronicle. The Weekly Chronicle has a circulation of 632, and the daily, approximately 40,000.

The statute requires a notice to be published for four consecutive weeks. In this case, the notice was published once each week for five consecutive weeks, and, as stated, two of the notices were in the Daily Chronicle and the other three in the weekly. In addition to this, the commissioners caused a notice of the sale of the bonds to be published in the "Bond Buyer," which is a journal generally consulted by purchasers of state and municipal securities. In the present case, as the result of the notices, the commissioners received inquiries from bond buyers in a number of the leading cities of the United States. No complaint, by any prospective purchaser, taxpayer or any other person was made with reference to the notice given or the price at which the bonds were sold, other than the challenge thereto by this action which was brought for the purpose of testing the validity of the bonds.

The purpose of the statute was to require notice. The publication made accomplished this purpose, and, even though it did not strictly comply with the statute, it was, nevertheless, sufficient because it was a substantial compliance therewith, and no prejudice is

shown. *Rands v. Clark County,* 79 Wash. 152, 139 Pac. 1090; *Kadow v. Paul,* 134 Wash. 539, 236 Pac. 90. The judgment will be affirmed.

TOLMAN, C. J., BEALS, HERMAN, and STEINERT, JJ., concur.