[No. 24740. *En Banc.* February 7, 1934.]

THE STATE OF WASHINGTON, *on the Relation of James McDonald, Appellant,* v. JOHN C. STEVENSON *et al., Respondents.*[1]

*L. B. Schwellenbach* and *Mark M. Litchman,* for appellant.

*Robert M. Burgunder* and *Arthur M. Hare,* for respondents.

MAIN, J.—James McDonald filed a petition in the superior court of King county in which he sought a writ of mandamus directed to the members of the board of county commissioners of that county requiring them to carry into effect the provisions of the old age pension act (chapter 29, Laws of 1933, p. 173, Rem. 1933 Sup., §§ 9998-1—9998-20). After the petition was filed, an alternative writ of mandate was issued, and the commissioners were required to show cause why a permanent writ should not issue. The commissioners appeared by demurrer and answer, and a hearing was

[1]Reported in 29 P. (2d) 400.

had which resulted in a judgment in the form of a writ of mandamus directing the commissioners to go forward under the act, but the judgment did not grant all the relief which the petitioner sought. From the judgment entered, the petitioner appeals. The commissioners, apparently being satisfied with the judgment in the extent to which it went, did not appeal.

Section 1 of the old age pension act provides that the board of county commissioners of each county ". . . shall have the power and it shall be their duty, in making provision for the support of the poor of the county, to provide funds in the county treasury for the purpose of carrying out the provisions of this act." Rem. 1933 Sup., § 9998-1.

Section 2, Rem. 1933 Sup., § 9998-2, provides that the board shall have power to grant a monthly pension, in such amount as the board shall determine, not to exceed thirty dollars per month, "to be paid out of the county treasury to any person who has attained the age of sixty-five years. . . ."

Section 3, Rem. 1933 Sup., § 9998-3, covers the matter of applications, their form and contents.

Section 5, Rem. 1933 Sup., § 9998-5, provides that the application, when filed with the clerk of the board, shall come on for hearing "before the board at the next ensuing regular session. . . ."

Section 6 provides that, upon the conclusion of the hearing, the board shall enter an order in its minutes ". . . denying the application and the grounds therefor, or granting a monthly pension to the applicant in such amount not exceeding thirty dollars per month, and for such length of time not exceeding one year, as to the board shall seem just and reasonable, . . ." Rem. 1933 Sup., § 9998-6.

Section 7 provides that the order granting a pension

". . . shall authorize the county auditor to draw his warrant upon the county treasurer for such payments to the applicant, . . . out of the current expense fund of the county." Rem. 1933 Sup., § 9998-7.

In the judgment entered, it was provided that the board of county commissioners (a) direct the county auditor to furnish blanks to the appellant and all applicants who apply therefor, in conformity with chapter 29, Laws of 1933, p. 173; (b) direct the clerk of the board of county commissioners to accept and file such applications; (c) conduct hearings on such applications in accordance with the provisions of the law; (d) complete the hearings within sixty days from the date of the filing of the applications; and (e) at the conclusion of the hearings enter an order in the minutes of the board "either granting a monthly pension to the relator or other applicants or denying the application and stating the grounds therefor."

It will be observed that nowhere in the judgment were the commissioners directed to draw warrants upon the county treasurer, or to provide funds for the payment of such pensions as the board should allow. The judgment, in so far as it granted affirmative relief, was in accordance with the provisions of the old age pension act; but it did not go quite far enough.

Section 1 of the act, as above appears, provides that

". . . it shall be their [the board of county commissioners] duty, in making provision for the support of the poor of the county, to provide funds in the county treasury for the purpose of carrying out the provisions of this act." Rem. 1933 Sup., § 9998-1.

Section 7, Rem. 1933 Sup., § 9998-7, provides that the commissioners, when they allow a pension, shall authorize the county auditor to draw his warrant upon

the county treasurer for such payment "out of the current expense fund of the county." Under these provisions, it was the mandatory duty of the commissioners to provide the funds, as stated in § 1, and to draw the warrants, as stated in § 7.

It is said, however, that the word "shall," as it appears in each of those sections, should be construed as "may." With this contention, we are not in accord. If such a construction were adopted, it would mean that the time when the act would become operative rested in the discretion of the board of county commissioners. We see nothing in the act which would justify such a construction. The legislature made its meaning plain, and it should be carried out. It is the duty of the commissioners, under the act, to pay the pensions allowed to the applicants out of any funds available, and if no funds are available, then it is their duty to provide the funds, in so far as they have the lawful authority so to do. The judgment should have directed the county commissioners to pay the pensions out of any funds available, and, if no funds are available, to provide such funds.

We affirm the judgment of the trial court in so far as it granted affirmative relief. The cause will be remanded to the superior court, with direction to amend the judgment and give the additional relief to which, it is herein pointed out, the appellant was entitled.

BEALS, C. J., MITCHELL, TOLMAN, HOLCOMB, MILLARD, BLAKE, and GERAGHTY, JJ., concur.

STEINERT, J. (dissenting)—In deciding the question now before us, it is well to have in mind the facts upon which the case rests.

On January 14, 1933, the relator made application to the county commissioners of King county, respond-

ents herein, for an old age pension. In his application, he recited that he was eighty-three years of age; that he had resided in the state of Washington for fifteen years last past; that he had no property except a small amount of personal property of the value of ninety-five dollars; that he had no income; that he was wholly incapacitated for work; and that he had no relatives responsible for his support. His application having been denied by the respondents, relator filed a petition in the superior court seeking a writ of mandamus to compel respondents to receive and accept his application, to hold a hearing thereon and grant him a pension, to provide funds in the county treasury for the purpose of carrying out the 1933 old age pension act, and, by resolution, to declare an emergency necessary for the issuance of emergency warrants in payment of old age pension claims.

The respondents demurred to the petition, and, without waiving their demurrer, also answered. In their answer, respondents admitted that the relator had duly made application for pension, and that they had not appropriated any funds for the purpose of carrying out the provisions of the old age pension act. All other material allegations of the petition were denied. Then, by way of an affirmative defense, the answer alleged that respondents then were, and for a long time prior thereto had been, providing large sums of money for the relief and assistance of the poor and indigent of the county; that, for many years then last past, they had extended relief to the petitioner by way of residence at the county home, treatment in the county hospital, and personal relief at his place of abode by payment of rent and furnishing of groceries and fuel, and that such aid and services had been supplied to petitioner continuously from 1926. The answer further alleged affirmatively that, for the year 1933,

the respondents had provided in the county budget the following items: For public welfare, the sum of $306,242.00, and for the county home, $51,716.00; that respondents already had made large emergency appropriations for the care of the poor and were taking the necessary steps to appropriate further sums for such relief. Relator did not deny the allegations of the affirmative defense, but demurred thereto.

Under this state of the pleadings and without the taking of any evidence, the matter was heard and disposed of by the trial court in the manner set forth in the prevailing opinion. It will thus be seen that the facts involved in the case are contained in the admissions of the answer and in the allegations of the affirmative defense.

With these facts in mind, let us consider the law bearing upon the case. Rem. Rev. Stat., § 9981, vests the board of county commissioners with "entire and exclusive superintendence of the poor in their respective counties." The old age pension act, upon which the present action is based, became effective June 7, 1933. Section 1 of the act reads:

"The board of county commissioners of each county, hereinafter called the board, in addition to their other powers and duties *in relation to the support of the poor* provided by law, shall have the power and it shall be their duty, *in making provision for the support of the poor of the county,* to provide funds in the county treasury for the purpose of carrying out the provisions of this act." (Italics mine.) Rem. 1933 Sup., § 9998-1.

Section 2 of the act reads:

"*The board shall have the power* to grant a monthly pension in such amount as the board shall determine, not to exceed thirty dollars per month, to be paid out of the county treasury to any person who has attained the age of sixty-five years, and is, and for five years

immediately preceding his application, has been an actual bona fide resident of the county, provided the applicant shall establish to the satisfaction of the board that he possesses the qualifications prescribed in the next section.'' (Italics mine.) Rem. 1933 Sup., § 9998-2.

Section 7 of the act reads:

''The order *granting* a pension shall state the name, age and place of residence of the applicant, the amount of the monthly pension, the date when such pension shall begin, and shall authorize the county auditor to draw his warrant upon the county treasurer for such payments to the applicant, or to such person as the board may designate, for the use of the applicant, *out of the current expense fund of the county.''* (Italics mine.) Rem. 1933 Sup., § 9998-7.

Section 18 of the act reads:

''Nothing in this act shall be construed as repealing any other act or part of an act for the support of the poor, but the provisions of this act shall be construed as an additional method of supporting the poor of the county, *and nothing herein shall be construed as vesting in any person the right to an old age pension, or the continuance thereof.''* (Italics mine.) Rem. 1933 Sup., § 9998-18.

It will thus be observed, from a reading of the foregoing quotations, that the primary purpose of the act is the support of the poor, and that its secondary purpose is the creation of additional machinery for the accomplishment of that purpose.

Reverting to § 1 of the act, it will be noted that the power conferred and the duty enjoined upon the board relate to a function which that board had theretofore been customarily discharging, namely, that of making provision for the support of the poor. The legislature knew, when it passed the act, that the board had been charged by statute with the duty of making provision

for the indigent, and knew of the method by which such provision had been continuously made. That method, of course, was, and only could be, either by including an item for that purpose in the annual budget, or else by an emergency appropriation. At the time that this action was begun, namely, June 29, 1933, the budget for that year had already been made up and, of course, did not include an item for old age pensions. It did, however, as the record shows and as has already been stated, contain an item for public welfare in the sum of $306,242.00 and an item for the county home in the sum of $51,716.00.

When, therefore, the legislature provided in § 7 of the act that the order *granting* a pension should authorize the county auditor to draw a warrant on the county treasurer payable out of the *current expense fund,* it undoubtedly had reference to that current expense fund in which provision had been made for such expense. It surely could not have intended that, despite a provision already otherwise made for the support of the poor, the board should, nevertheless, draw upon a fund that was allocated to other necessary expenses of government. It could not have intended that all other necessary governmental functions should halt, while a new and additional method of procedure regarding one particular function received attention. The reasonable interpretation to be placed upon § 1 of the act is that, *in making provision* for the support of the poor, according to its previous and regular method, the board should include therein an item for old age pensions.

The time for making provision in the 1933 budget had already passed when this action was commenced. Hence, so far as the current expense fund for 1933 was concerned, this action was ineffectual and abortive. In so far as the year 1934 was concerned, the

time for making up the budget had not yet arrived when this action was begun. It must be presumed that the board will obey the mandate of the legislature with respect to the proper provision for 1934, and there is no showing whatever that the board has not done, or will not do, so. Hence, the action was premature in so far as it related to the 1934 current expense fund.

Recognizing the situation then obtaining, as above outlined, the legislature attempted to provide a ready and immediate source of income for the old age pension fund by providing that a certain percentage of the moneys realized under the operation of the horse racing act (chapter 55, Laws of 1933, p. 290, § 9, Rem. 1933 Sup., § 8312-9) should be placed in the state old age pension fund and thereafter allocated to the respective county old age pension funds. It is conceded that the horse racing act, has unfortunately, not produced sufficient revenue to meet the needs of old age pensions. The action of the legislature was indeed a generous subscription, but it was restricted by a discouraging "if, as and when."

The only other available source of revenue is through emergency warrants. The issuance of such warrants is governed by Rem. Rev. Stat., § 3997-6. Under that section of the statute, the approval of emergency expenditures rests with the board of county commissioners. If the board determines that there is an emergency, the matter may be reviewed by the superior court, and the court's determination as to whether an emergency actually does, or does not, exist and whether the expenditures authorized are excessive, becomes final. But until the board has declared that an emergency does exist, courts cannot presume that there is one, nor compel the board to proceed upon

that presumption. In the recent case of *Rummens v. Evans,* 168 Wash. 527, 13 P. (2d) 26, we said:

"The board having made such finding and declaration of immediate emergency, unless it appears that it has acted arbitrarily or capriciously, it is not for the courts to disturb its action."

In *Kruesel v. Collin,* 170 Wash. 233, 16 P. (2d) 442, we said:

"Whether the commissioners in 1930 and 1931, when they prepared the budgets for those respective years, should have reasonably foreseen that there would be a greater demand upon the indigent relief fund than was provided for in the budget, presents a question of fact which involves an element of discretion, and, where the board has found the fact and the trial court has affirmed the finding, this court will not disturb such finding, unless the evidence clearly preponderates against it, or it appears that the board acted arbitrarily or capriciously."

Conversely, if the board fails to make such declaration, unless it appears that its refusal so to do is arbitrary or capricious, courts should not disturb its action.

When we consider what the board has already done under the existing distressing conditions, considering the ability, as well as the needs, of the community, it surely cannot be said that the board has acted arbitrarily or capriciously.

By the express terms of § 18 of the old age pension act, the provisions of that act merely afford an additional method of supporting the poor of the county, and no person is vested with any absolute right to an old age pension. Section 2 of the act provides that the board of county commissioners *shall have the power* to grant a monthly pension. The board is thereby vested with full discretion. In the exercise of that discretion, it must of necessity consider the needs of

the applicant, the provision that has already been, and is being, made for him, and the availability of funds for the new system of support. This the board has done, as the record discloses. The court should not compel it to do more.

In my opinion, there is no basis for this action further than was sanctioned by the trial court in its judgment, and I therefore think that the judgment should be affirmed.