[No. 13277.  *En Banc.*  March 11, 1916.]

F. R. Singleton, *Respondent*, v. M. L. Hamilton *et al.*,
Appellants, Stimson Company, *Intervener*.[1]

Paupers—Care and Maintenance — Powers of Commissioners—
Poor Farms.  The county commissioners are, by necessary implica-
tion, authorized to purchase a county poor farm for paupers, by
Rem. & Bal. Code, § 8374, vesting the commissioners with entire and
exclusive superintendence of the poor; Id., § 8377, providing that
they may enter into contracts for the maintenance or appoint agents
to oversee and provide for paupers; and Id., § 8384, authorizing them
to provide workhouses for their accommodation and employment.

Same.  Such power is conferred by necessary implication by Id.,
§ 3822, authorizing a county to purchase such lands as may be neces-
sary to its corporate or administrative powers, and Id., § 3824, pro-
viding that the powers of the county can be exercised only by the
county commissioners; the power to care for paupers being a corpo-
rate and administrative power.

Appeal from a judgment of the superior court for King
county, Ronald, J., entered November 12, 1915, in favor of
the plaintiff, in an action for injunctive relief, tried to the
court.  Reversed.

*Alfred H. Lundin, Edwin C. Ewing*, and *Kerr & McCord*,
for appellants and intervener.

*Wettrick, Anderson & Wettrick*, for respondent.

Mount, J.—The only question involved in this case is
whether the county commissioners of King county are author-
ized to purchase and conduct a county poor farm for paupers
within that county.  The trial court was of the opinion that
the statute, neither by express terms nor by necessary impli-
cation, authorized the purchase of such a farm, and entered
judgment accordingly.  This appeal is prosecuted from that
judgment.

[1]Reported in 155 Pac. 1057.

The statute in relation to paupers provides as follows, at Rem. & Bal. Code, § 8374 (P. C. 115 § 305):

"The board of county commissioners of the several counties of this state are hereby vested with entire and exclusive superintendence of the poor in their respective counties: Provided, that this section shall not be so construed as to include any incorporated city or town having by its charter any of the powers enumerated in said section."

Section 8377 (P. C. 115 § 311) provides:

"When any poor person shall not have relatives in any county in this state, as are named in the preceding sections, or such relatives shall not be of sufficient ability, or shall fail or refuse to maintain such a pauper, then the said pauper shall receive such relief as the case may require, out of the county treasury; and the county commissioners may either make a contract for the necessary maintenance of the poor, or appoint such agents as they may deem necessary to oversee and provide for the same."

Section 8384 (P. C. 115 § 325) provides:

"The board of county commissioners of any county in this state may, if they think proper, cause to be built or provided in their respective counties workhouses for the accommodation and employment of such paupers as may from time to time become a county charge; and said workhouses and paupers shall be under such rules and regulations as said board of commissioners may deem proper and just. . . ."

It is apparent from these provisions that the board of county commissioners of the several counties in this state are vested with the entire and exclusive superintendence of the poor within their respective counties; second, that the county commissioners may enter into contracts for the maintenance of the poor, and provide for the same out of the county treasury, or may appoint agents to oversee and provide for such paupers; and third, the county commissioners may build or provide workhouses for the accommodation and employment of such paupers in their respective counties. We think it is apparent from these provisions of the statute

that the county commissioners of the different counties in
this state are vested with the entire charge of paupers with-
in their counties.  It is true there is no express provision for
the purchase of farms or lands for the purpose of caring for
such paupers.  But we are satisfied that a superintendence
of such paupers necessarily implies that the county commis-
sioners may purchase lands for that purpose.  Otherwise
there would be little use to appoint agents to oversee and
provide for such paupers; and county commissioners could
not cause to be built or provided in their respective counties
workhouses for the accommodation and employment of such
paupers.  We think it follows as a matter of course, by nec-
essary implication, that, when the county commissioners are
made by statute the supervisors of the poor in their county,
and authorized to appoint agents to oversee and provide for
the same, and are authorized to provide for and cause to be
built workhouses within the county for the support and ac-
commodation of the poor, the necessary means to carry
out these ends could be provided.

Furthermore, we are satisfied that, even though the power
to purchase land is not necessarily implied in these provi-
sions, the statute which defines the general powers and duties
of county commissioners is broad enough.  Relating to the
powers of bodies corporate, the statute provides:

"The several counties in this state shall have capacity as
bodies corporate . . . to purchase and hold lands within
its own limits; to make such contracts, and to purchase and
hold such personal property, as may be necessary to its cor-
porate or administrative powers, and to do all other neces-
sary acts in relation to all the property of the county."
Rem. & Bal. Code, § 3822 (P. C. 107 § 1).

Section 3824 (P. C. 107 § 5) provides that the powers of
the county can be exercised only by the county commission-
ers, or by agents or officers acting under their authority.

We have seen above that the county commissioners of the
different counties in this state are vested by statute with en-

tire and exclusive superintendence of the poor in their respective counties. It follows that the power to care for paupers within their respective counties is a corporate and administrative power. This being so, it is plain that, under the provisions of § 3822, the commissioners have power to purchase lands necessary to the exercise of such power. And this, we take it, is an express authorization to county commissioners to purchase necessary lands for the use of paupers. The extent of such lands, and the facilities for operating· the same, must necessarily rest within the discretion of the commissioners, limited only by the indebtedness which the county commissioners may create for county purposes.

The case of *Cochrane v. King County*, 12 Wash. 518, 41 Pac. 922, involved the right of county commissioners to con-- struct a building for the county to be used for the mainte-- nance of its paupers. The question decided in that case was that county commissioners might authorize the expenditure of money for that purpose when funds were not already available in the treasury. It was apparently conceded in that case that the county was authorized to construct such buildings. The question was necessarily conceded, or otherwise the judgment could not have resulted as it did in that case. And it has been the policy of the different county commissioners in this state to purchase, own, and operate farms for the care of paupers within their respective counties. In other words, it has been the uniform custom in the state to construe these sections as authorizing county commissioners to purchase poor farms.

It is apparently conceded that county commissioners would have authority to build or provide workhouses. But it is contended, as we understand the argument of the respondent, that the term "workhouses" here means jails, or places where prisoners are confined. That may have been the ordinary original meaning of the term workhouse. But that term is also defined by Bouvier as "A house where the poor are taken care of and kept in employment." Bouvier, Law Dictionary

(Rawle's 3d Rev.), p. 3487. And clearly this was the meaning that the legislature intended the word "workhouse" should have in Rem. & Bal. Code, § 8384 (P. C. 115 § 325), because it is there stated that county commissioners may cause to be built or provided in their respective counties, workhouses for the accomodation and employment of such paupers as may from time to time become county charges. The statute itself defines workhouses as being for the "Accomodation and employment of such paupers as may from time to time become a county charge."

For these reasons, we are satisfied that a proper construction of these statutes authorized the county commissioners to purchase a farm for the accomodation, employment, and care of paupers within their respective counties. The trial court therefore erred in holding that the county commissioners of King county had no authority to make the purchase in this case.

The judgment is reversed, and the cause remanded with directions to dismiss the action.

MORRIS, C. J., HOLCOMB, BAUSMAN, MAIN, ELLIS, and PARKER, JJ., concur.