SWEET CLINIC, INCORPORATED, *Appellant,* v. LEWIS COUNTY, *Respondent.*[1]

[1]Reported in 282 Pac. 832.

*Dysart & Ellsbury,* for appellant.

*William H. Grimm* and *Russell L. Ponder,* for respondent.

BEALS, J.—Plaintiff, during the year 1926, was operating a hospital in the city of Centralia, Lewis county, Washington. April 8 of that year, one Harry Smith, a pedestrian, while proceeding along the Pacific highway between Olympia and Tenino, in Thurston county, Washington, was struck by an automobile and his back broken. The injured man was taken to the hospital maintained by plaintiff, where he received first aid and where he remained for several months receiving medical attention, room, board and supplies required in dressing his wounds, the total value of all material and services rendered him up to December 28, 1926, being alleged by plaintiff to be the sum of $1,167. January 14, 1927, plaintiff presented to the board of county commissioners of Lewis county its properly verified claim against the county, setting forth, in addition to the foregoing facts, that Harry Smith was penniless; that he had no property of any kind and no relatives to care for him, nor any protection by way of insurance; that he was still bedridden and would probably remain so the rest of his life; that his care was reasonably worth $4.50 per day. Plaintiff's claim was rejected by the board of county commissioners, whereupon this action was instituted.

In its amended complaint, plaintiff, after setting forth its corporate existence and that of defendant, alleged that one Harry Smith, the person referred to in its claim against the county, was injured as therein set forth (the specific facts being pleaded with particularity); that prompt medical and surgical attention was necessary to save his life; that he was brought to plaintiff's hospital, where he received first aid; that his injuries were of such a nature that it was necessary that he receive immediate attention and that there was not time to notify the county commissioners of Lewis county before administering aid to the injured man; that Harry Smith was a resident of Lewis county at the time of the accident and at all times since; that he was still in plaintiff's hospital suffering from a broken back and paralysis of the lower part of his body; that he was helpless and could not leave the hospital unless taken thence on a stretcher; that Mr. Smith was wholly without means of any sort and that shortly after he was brought to plaintiff's hospital plaintiff notified the board of county commissioners of defendant county of the facts of the case and demanded that the county take charge of Mr. Smith and furnish him with proper medical and surgical aid together with hospital attention and support, all of which the county commissioners refused to do; that plaintiff filed its verified claim with the board of county commissioners for the reasonable value of the services rendered by it to Mr. Smith; that the claim had been rejected and that the amount set forth therein was unpaid and justly due plaintiff from defendant.

To this amended complaint, defendant demurred upon several grounds. This demurrer was sustained by the trial court upon the ground that the amended complaint failed to state facts sufficient to constitute a cause of action. Plaintiff elected to stand upon its

amended complaint, and in due time judgment was entered dismissing the action, from which judgment plaintiff appeals.

The following sections of Rem. Comp. Stat. are relevant to the questions before us for decision:

"Sec. 9981. The board of county commissioners of the several counties of this state are hereby vested with entire and exclusive superintendence of the poor in their respective counties: Provided, that this section shall not be so construed as to include any incorporated city or town having by its charter any of the powers enumerated in said section."

"Sec. 9982. Every poor person who shall be unable to earn a livelihood in consequence of bodily infirmity, idiocy, lunacy, or other cause shall be supported by the father, . . ."

"Sec. 9984. When any poor person shall not have relatives in any county in this state, as are named in the preceding sections, or such relatives shall not be of sufficient ability, or shall fail or refuse to maintain such pauper, then the said pauper shall receive such relief as the case may require, out of the county treasury, and the county commissioners may either make a contract for the necessary maintenance of the poor, or appoint such agents as they may deem necessary to oversee· and provide for the same."

"Sec. 9986. When any nonresident, or any other person not coming within the definition of a pauper, shall fall sick in any county in this state, not having money or property to pay his board, nursing, or medical aid, it shall be the duty of the commissioners of the proper county, on complaint being made, to give or order to be given such assistance to such poor person as they may deem just and necessary; and if said sick person shall die, then the said commissioners shall give or order to be given to such person a decent burial; and the said commissioners shall make (such) allowance for board, nursing, medical aid, or burial expenses, as they shall deem just and equitable, and order the same to be paid out of the county treasury."

The New Standard Dictionary (edition 1920)

defines a pauper as "one without means of support; one dependent upon charity; specifically, a destitute person who receives or is entitled to receive aid under a pauper law."

Considering sections 9984 and 9986, *supra*, together, it is apparent that the legislature, in the latter section, when referring to "any other person not coming within the definition of a pauper," intended to include persons who, while possibly poor and without property or means, were not receiving or entitled to receive aid prior to falling sick (which must be construed to include suffering of bodily injury), as set forth in the section referred to. The latter section contemplates the rendition of relief made necessary by sudden misfortune, either sickness or physical injury, coming to a person within the boundaries of this state and placing him in such a position that assistance is necessary. The section provides for the meeting of an emergency. The fact that a necessity for aid arises after the disability takes place does not bring the unfortunate sufferer immediately within the definition of the word "pauper" as contained in § 9984. By § 9986 the legislature manifestly intended to make "the proper county" responsible for the care of a person not a pauper (in other words, not "a destitute person who receives or is entitled to receive aid under a pauper law") suffering disability by reason of sickness or accident within this state and for the decent burial of such person in case death should ensue. Sections 9984 and 9986, construed together, would seem to provide for the rendition by the counties of this state of necessary assistance to all persons actually and in good faith in need of help. A man may be at a particular time without financial or other resources; he may, however, be possessed of good health and may be employed at a high salary. Such a person is nowise

a pauper, although if he should suffer sudden sickness or injury and his salary cease the necessity might at once arise for relief from his county under § 9986, *supra.*

Many cases arise in which common humanity requires that relief be extended to persons in urgent need thereof. Such a case is presented, *prima facie,* by the allegations of appellant's amended complaint. Respondent's counsel earnestly argues on behalf of the taxpayers of his county that no facts are alleged sufficient to subject their county funds to liability, but the question before us seems to be not so much whether the expenditure of funds belonging to taxpayers may be avoided, but whether such expenditure shall fall upon one taxpayer alone or upon the entire body of taxpayers. Respondent does not argue that money may be saved or expenditures reduced by one construction of the law or another, but only that the body of all the taxpayers may be relieved from certain expenditures by throwing the entire burden thereof upon one of them.

Respondent contends that the allegation in appellant's amended complaint, to the effect that Harry Smith was a resident of Lewis county at the time of his injury and since, is repugnant to certain statements contained in its claim, as filed with the county commissioners, to the effect that Mr. Smith's last residence was in Thurston county. The statements in the claim as to the injured man's residence are not so positive or definite as to render the amended complaint fatally defective on the ground of repugnancy.

Respondent argues that, before any person is entitled to receive assistance from the county by virtue of the provisions of § 9986, *supra,* it must appear, first, that such person is either a nonresident or one not coming within the definition of a pauper; second,

that he must fall sick in some county in this state; third, that he shall be without means, and fourth, that the county against which the claim is made is the proper county.

For the reasons above stated, we hold that, under the allegations of appellant's complaint, it sufficiently appears that Harry Smith was not a pauper and that such allegations bring him within the provisions of this section.

In regard to the second and third propositions, it is manifest that the complaint contains sufficient allegations to the effect that Mr. Smith fell sick, or was injured, which we hold amounts to the same thing, in one of the counties of this state, and that he was without means. As against a general demurrer, we hold the allegations of the amended complaint sufficient, as against the fourth test sought to be applied thereto by respondent's counsel.

The question as to whether or not in this particular instance the facts as they may be disclosed upon the trial will demonstrate that the liability to provide assistance to Mr. Smith, if any, rested upon respondent Lewis county or upon Thurston county, or upon some other county, cannot at this time be considered.

Respondent relies upon several opinions of this court, the first in point of seniority being the case of *King County v. Collins,* 1 Wash. Terr. 469. Collins and another, in this court defendants in error, sued King county for the purpose of recovering judgment for the board and lodging of an alleged pauper family, and from a judgment in their favor the county appealed. It appeared that the commissioners of King county had directed the auditor to notify the commissioners of Snohomish county that one S., "a Snohomish county charge, is now being maintained as a pauper in King county," and had received benefits in a speci-

fied amount. The auditor was further directed to notify the Snohomish county commissioners that they must pay the amount of the accrued bill, future accruals, and that they must also take charge of and remove the alleged pauper to his own county. In its opinion, the court says that it appeared that Mr. Collins and another had maintained the unfortunate family more than twelve months, during which time the board of county commissioners of King county met at least four times, the court apparently finding that Mr. Collins had not during the period mentioned presented the matter to the county commissioners for their consideration. The court goes on to say that the county commissioners have the entire and exclusive superintendence of the poor and

" . . . it is for them to determine who are paupers and entitled to relief, and they are to make the necessary contracts for the support of all paupers, who are by them deemed a charge upon their county."

The court also says that the commissioners of King county had full power and authority to determine whether S. was or was not a King county charge, and that if it had been determined that he was, it would have been the duty of the board to provide for him. The duty of the county commissioners being as stated, we think it must be held that in the exercise of their duty they are, to some extent at least, subject to judicial authority. In the case under discussion, the primary question was evidently whether or not the pauper was a resident of King or Snohomish county. Suppose that the King county commissioners found that he was a resident of Snohomish county and refused to assist him, and the Snohomish county commissioners found that he was a resident of King county and refused aid. Such an *impasse* would certainly call for the assistance of the courts. It being the duty of

the board of the proper county to provide for the pauper, certainly that duty could not be avoided by an arbitrary refusal to perform the same. Of course no such question was presented, and the language of the court must be construed in view of the matters to be determined. The only order of the commissioners introduced in evidence was, as above stated, a finding that the alleged pauper was not a King county charge, and included a call for his removal therefrom. The judgment in favor of Mr. Collins was reversed and a new trial ordered.

In the case cited, it clearly appears that no emergency whatever existed. The court distinguishes certain cases which were cited by saying that they were "cases of emergency." The appellate court did not order the action dismissed, but ordered a new trial, evidently upon the theory that certain testimony was erroneously received. The granting of a new trial, however, certainly implies that it could not have been held that, as a matter of law, no liability on the part of the county existed. In any event, the facts of the case are so utterly different from those in the case at bar that the opinion of the court has little bearing upon the questions now before us.

Respondent also relies upon the case of *Singleton v. Hamilton,* 90 Wash. 243, 155 Pac. 1057. This was a proceeding in which the plaintiff sought to enjoin the county commissioners from purchasing land for a county poor farm. The county commissioners appealed to this court from an adverse judgment, and on appeal it was held that the judgment of the superior court was erroneous and that the county commissioners had authority to purchase a farm for the accommodation, employment and care of paupers. In its opinion this court quotes several of the sections of the statute above set forth, and states that it clearly appears therefrom

that the commissioners of the several counties of the state

" . . . are vested with the entire and exclusive superintendence of the poor within their respective counties. It follows that the power to care for paupers within the respective counties is a corporate and administrative power."

Citing the case of *Cochrane v. King County,* 12 Wash. 518, 41 Pac. 922, this court concludes that the commissioners were lawfully possessed of the power which they sought to exercise. In this case, also, the language used must be construed with reference to the subject-matter of the litigation, which was utterly different from the questions presented by the case at bar.

Finally, respondent relies upon the case of *Guerin v. Clark County,* 90 Wash. 242, 155 Pac. 1035, which undoubtedly supports respondent's position. The plaintiff in the case cited, a physician, sued the county for professional services rendered therein, in an emergency, to one resident and eight nonresident indigent persons. From an adverse judgment, the plaintiff appealed, the judgment against him being affirmed by this court, which held that the appellant "neither had a claim to begin with nor had properly presented one." This decision is authority for the proposition that a county cannot be made liable for such services without an order from some one in authority. The only case cited in the opinion is that of *King County v. Collins, supra,* which clearly does not support the conclusions of this court apparently based thereon. We are convinced that the rule laid down in the case of *Guerin v. Clark County, supra,* is not supported by either the laws of this state or the authorities generally, and that case is overruled.

We are now of the opinion that, under the law, a county may be held liable to a person who furnishes

medical or surgical aid or hospitalization to a person falling within the classes designated by § 9986, *supra,* under the circumstances alleged by appellant, for the reasonable value of such services, as the same may be determined in view of all the circumstances of the case. If such services were rendered without authority from any county official authorized by law to bind the county, it must, of course, appear that an emergency existed which rendered it impossible to await such authorization, and that the situation was promptly reported to the board of county commissioners or to the proper county official, of the proper county. The other elements referred to in the statute must also, of course, be present, and it must appear that all parties were acting in the utmost good faith.

As to what other elements may enter into the liability of a county in such a case, we do not undertake to say, but we hold that, in the case now before us, appellant's amended complaint states a cause of action, and the judgment appealed from is reversed with directions to the superior court to overrule respondent's demurrer and proceed with the action.

MITCHELL, C. J., TOLMAN, FRENCH, and MAIN, JJ., concur.

PARKER, J. (dissenting)—I think the decision of this court rendered in *Guerin v. Clark County,* 90 Wash. 242, 155 Pac. 1035, is conclusive against appellant, expresses a correct interpretation of the statutes and should not be overruled. These are the unchanged statutory provisions which governed the disposition of that case. In denying recovery sought upon the same grounds as is sought here, we there said:

"These persons were not accepted paupers, and no county officer had requested plaintiff to treat them. Nothing can be plainer, under Rem. & Bal. Code, § 8377

*et seq.* (P. C. 115, § 311), than that, however much the poor may of a sudden require a physician, a bill for such work cannot be run up against the county without an order from some one in authority. Even were we to suppose the county under a common law obligation, this thing has long been regulated by statute. Neither that statute nor reason exposes our counties to what might otherwise become enormous charges, unnecessary services, and feigned situations.''

MILLARD, J., concurs with PARKER, J.

FULLERTON, J. (dissenting)—I am unable to concur in the foregoing opinion. The statutes which the majority cite were enacted in territorial days; in fact, they have been upon the statute books in substantially their present form since the first session of the territorial legislature. Early they received a construction by the territorial court. In *King County v. Collins,* 1 Wash. Terr. 469, the action was by Collins against the county to recover for board and lodging furnished certain persons. One of the grounds of the action was that the persons were indigent and entitled to support from the county. The court denied the right of recovery, holding that affirmative action by the board of county commissioners must be had before the county can be charged with the support of an alleged pauper, and that a person furnishing such support cannot recover from the county unless he is able to show that the person to whom the relief was furnished had been adjudicated to be a pauper by the county board, or that he had been authorized by the board to keep him as such. In the course of the opinion, this language was used:

''The board has the entire and exclusive superintendence of the poor. It is for them to determine who are paupers and entitled to relief, and they are to make the necessary contracts for the support of all paupers, who are by them deemed a charge upon their county.''

The rule announced was followed in a case arising since statehood. In *Guerin v. Clark County*, 90 Wash. 242, 155 Pac. 1035, a physician sought to recover against the county for medical attention furnished by him to persons alleged to be indigent and poor. We again denied the right of recovery, using this language:

"These persons were not accepted paupers, and no county officer had requested plaintiff to treat them. Nothing can be plainer, under Rem. & Bal. Code, § 8377 *et seq.* (P. C. 115, § 311), than that, however much the poor may of a sudden require a physician, a bill for such work cannot be run up against the county without an order from some one in authority. Even were we to suppose the county under common law obligation, this thing has long been regulated by statute. Neither that statute nor reason exposes our counties to what might otherwise become enormous charges, unnecessary services, and feigned situations. These are old statutes and this their old interpretation."

In *Singleton v. Hamilton*, 90 Wash. 243, 155 Pac. 1057, the court referred to the statutes cited in the majority opinion, and said:

"It is apparent from these provisions that the board of county commissioners of the several counties in this state are vested with the entire and exclusive superintendence of the poor within their respective counties; . . ."

It is my opinion that these cases correctly construe the statute—that their purpose and intent was to provide that no one can create an obligation against the county for the care of the poor without the direct sanction of the board of county commissioners.

But if the statutes will admit of another construction, I regret that the court has seen fit to depart from the earlier rule. It was first announced over fifty years ago, and there should come a time when a rule adopted by the court has the effect of finality. If the rule is not

to be followed in this instance, then manifestly every cause presented to the court, no matter what our previous decisions have been, must be regarded as a cause *res integra.*

The rule the court now adopts is, moreover, fraught with dangerous consequences. The effect of the majority decision is to take away from the boards of county commissioners, and vest in juries, the right to determine whether an alleged indigent person is or is not entitled to support out of the county treasury. It requires no gift of prescience to foresee to what consequences this will lead; it exposes the county to a suit in every instance where services have been rendered or support has been furnished to a person unable to pay for the services or support. Nor can I see any emergency which requires a change in the earlier rule. The poor have not suffered from it, and those who deal directly with them with the hope of reward do so with the understanding that the board has the power to say whether or not such an award shall be made, and they thus suffer no unforeseen hardship.

In my opinion, any change in the rule should be made by the legislature and not by the court, and I therefore dissent from the conclusion of the majority.

HOLCOMB, J. (dissenting)—The views stated by Judges Parker and Fullerton in their dissents receive my hearty concurrence, but there is a statement in the majority opinion apparently overlooked by them upon which it seems advisable that something be said, even at the risk of undue prolixity in the report of this decision. I am in sympathy with the generous humanitarian motives actuating the majority; but we are governed by law and in this instance, not only by *stare decisis,* but by positive law, the statute. The story told in the complaint reads like the Biblical

parable of the Good Samaritan; but there are no equities in such a case as this.

In the majority opinion it is said:

"We are convinced that the rule laid down in the case of *Guerin v. Clark County, supra,* is not supported by either the laws of this state or the authorities generally and that case is overruled."

It is sought, by determining that the injured person in this case was not technically a pauper, nor one defined by statute to be a pauper, to ground the right of recovery upon Rem. Comp. Stat., § 9986. The law is well settled that the same rules apply to a poor person, indigent person, or a person temporarily in need of emergent aid of any kind in a county or poor district.

"For general purposes the terms 'poor person,' 'pauper,' 'indigent' and 'destitute' may be regarded as synonymous.

"The words 'pauper' and 'indigent' convey the meaning that the person has neither money nor estate, is without credit, and is unable to maintain himself because of inability to work or to obtain employment, . . ." 21 R. C. L., §§ 4 and 5, p. 703-4.

"The liability of towns and counties for the support of the poor is strictly statutory, and, however equitable the claim, there can be no recovery without compliance with the statutory prerequisites." 30 Cyc. 1153.

To the rule that there can be no liability on the part of a town or poor district to reimburse a third person who voluntarily affords relief to a pauper, even though there is an immediate necessity for relief before the poor officer can be communicated with, and that no action therefor will lie by him against the town or district unless it is expressly given by statute, or is founded on an express or implied contract, as stated in 48 C. J. 537, besides our own *Collins* case, *supra,* are cited cases from Arkansas, Colorado, Connecticut, Illinois, Indiana, Iowa, Kentucky, Maine, Massachu-

setts, Mississippi, Missouri, Nebraska, New Hampshire, New York, North Dakota, Ohio, Pennsylvania, Rhode Island, South Dakota, Vermont, Wisconsin and England. Some examination shows the cases cited to be both early and recent ones.

To the point that, where the statute specifically provides what persons county officers are bound to relieve and the nature of the services for which the county shall be liable, no recovery can be had for medical services not rendered in accordance with the terms of the statute; and that a town or poor district is not liable for medical service voluntarily furnished for the relief of a pauper without any contract with, or request from, the officers of the poor, or someone in authority, as stated in 48 C. J. 539, are cited, besides our own *Guerin* case, *supra,* recent and early cases from Oklahoma, Saskatchewan, Arkansas, Indiana, Iowa, Maryland, Massachusetts, Nebraska, New Jersey, New York and Vermont. In the Arkansas case cited, *Cantrell v. Clark County,* 47 Ark. 239, it was said that the law presumes the services are bestowed in charity where they are rendered by a physician to a poor person in an emergency and no action against the county will lie therefor. See, also, 21 R. C. L. 712-13.

The provisions for the relief of paupers, or indigent persons, are purely statutory, and the power exercised is one which rests primarily in the sovereignty and is purely governmental in its nature. See Notes, 4 Ann. Cas. 625; Notes, Ann. Cas. 1913C 79.

In the case at bar, there was no request, order or subsequent adoption or ratification of the treatment by appellant, made by any statutory county agency. In such case, under our statute and the law generally, without an exception that has been discovered by annotators or judicial writers, no liability can be imposed upon the public.

Our previous decisions, which are now casually overruled by the majority, were not only in strict conformity to the statute, but were in harmony with, apparently, almost universal authority. Although the former decisions did not review the authorities generally, they were probably examined and the principle seemed so well settled that it was not considered necessary so to do.

For these additional reasons, I also dissent.