[No. 24035. Department Two. June 30, 1932.]

GEORGE H. RUMMENS, *Appellant,* v. DON H. EVANS *et al., Respondents,* MARGARET G. SIMPSON, *Intervener-appellant,* DAN MADISON *et al., Intervener-respondent.*[1]

[1]Reported in 13 P. (2d) 26.

*Rummens & Griffin* and *Wm. G. Long,* for appellants.

*Robert M. Burgunder* and *Arthur M. Hare,* for respondents.

*Hyland, Elvidge & Alvord, amicus curiae.*

HOLCOMB, J.—On May 24, 1932, the board of county commissioners of King county unanimously adopted a resolution declaring, in substance:

(1) That the constitutional debt limit of King county has been reached, and that no election can be held for authority to exceed the debt limit until November, 1932;

(2) That 17,000 families, or in excess of 50,000 persons, in King county are now and for many months have been destitute and indigent, requiring the furnishing of food, shelter and supplies from public funds of the county to preserve their health and prevent their starvation;

(3) That a grave public emergency exists which, unless provided for, may seriously endanger the public health and the preservation of order within King county;

(4) That, in the opinion of the board, it is a necessary governmental function imposed by the constitution and law of this state to provide relief for such persons;

(5) That a governmental emergency exists requiring the incurring of obligations in excess of the constitutional debt limit for the purpose of providing for such persons;

(6) That it may be advisable that poor and destitute, but able bodied persons, in consideration for such relief as may be extended to them, shall perform such work and labor as shall be provided for them;

(7) Appropriating $200,000 beyond the constitutional debt limit, in addition to the sums provided for

in the budget in 1932, for the items included under operation and maintenance for the public welfare department of the county, which sum is to be used solely and exclusively for the purchase of food and providing shelter and supplies for the poor, destitute, indigent and infirm persons of King county;

(8) That the auditor of King county shall draw a warrant or warrants, not exceeding such amount, on the current expense fund of the county, chargeable to the operation and maintenance of the public welfare department of the county, payable to such persons or organizations as shall hereafter be designated in voucher or vouchers approved by the county commissioners.

On May 25, 1932, appellant Rummens commenced an action in the superior court for King county against the county commissioners, county auditor, and King county, to enjoin the issuance of such warrants, and on the same day appellant Margaret G. Simpson intervened in that action, joining with plaintiff therein in seeking the same relief. Thereafter, respondent Dan Madison and United Producers League of King county intervened in the action, interposing demurrers to the complaint of Rummens and Simpson.

In his complaint in intervention, Madison alleged, *inter alia,* that, without fault on his part, and in spite of diligence and constant effort, he had been unable to secure sufficient work for several months last past to support his family, and that he and his family had been compelled to depend on the county and charitable institutions for a part of their sustenance; that his children have not sufficient and proper food, and are often forced to attend school without lunch; that he and his family are barely receiving sufficient food to sustain them, and that he will be forced to depend for part of their food during the next several months on King

county and charitable institutions; that he, as well as the 50,000 other men, women and children dependent on the county for part of their food, are vitally and directly interested in the outcome and determination of the action, and in having the court declare the warrants to be issued under the resolution of the county board as valid obligations against King county when and as issued.

Thereafter, appellant Rummens and Mrs. Simpson filed amended complaints, and by a stipulation of all the parties, the demurrers above mentioned were deemed to have been interposed against the amended complaints.

The material allegations of the amended complaint of appellant Rummens are:

(1) That, on or about May 24, 1932, the commissioners of King county adopted the resolution above referred to, and that defendants are about to issue or cause to be issued the warrants described in the resolution; that wherever in the resolution the word "constitutional" appears, the board intended the word "statutory" and wherever in the resolution the word "value" appears, the board intended the words "assessed value;" that in truth and in fact the constitutional debt limit of King county of one and one-half per cent of the value of the taxable property in King county has not been reached;

(2) That the statutory debt limit of one and one-half per cent of the assessed value of the taxable property of King county has been reached, and that no election has been or can be held until November, 1932, authorizing the commissioners to exceed the statutory indebtedness;

(3) That King county has in cash in the road and bridge fund, river improvement fund, road districts

No. 2 and No. 3, in excess of $388,000, and that subsequent collections for the year 1932 in those funds will be in excess of $215,000; that of such sums not more than $50,000 is necessary for road, bridges and river maintenance, and that no new construction is necessary to promote public safety; that only a small portion of such funds are obligated, and virtually all thereof are now and will be available for use in carrying out the purposes specified in the resolution; and that, if the statutory debt limit can be exceeded at all for the purpose specified in the resolution, it can only be done after the county commissioners have diverted for such purposes the money in the aforesaid funds; that such road, bridge and river improvement funds are ample for the purposes set forth in the resolution for several months to come;

(4) That, by reason of the premises, the issuance of the warrants authorized in such resolution is unlawful and unnecessary, and unless enjoined will impose an illegal burden upon the taxpayers of King county.

The amended complaint of intervener Simpson makes the same allegations, and in addition thereto alleges, in substance:

(1) That King county has been and now is engaged in non-governmental functions, the expenditures for which can be immediately greatly reduced or completely eliminated in an amount of not less than $150,000 for the remainder of the tax year, and can, without impairing governmental efficiency, immediately effect economies in governmental functions in an amount of an additional $500,000 for the remainder of the tax year, and that the funds saved for such economies will amply provide for the purposes recited in the resolution;

(2) That, of the persons described in the resolution as having received, and receiving, aid from the public funds of King county, eighty-five per cent are resident in the city of Seattle, and that the city has for a long time past been and now is engaged in non-governmental functions, the reduction or elimination of which would make available for the care of the destitute of Seattle an additional $500,000 for the remainder of the tax year; that the city, without impairing governmental efficiency, can immediately effect economies in the performance of the governmental functions in an additional amount of not less than $1,000,000 for the remainder of the tax year; that, to date, the city has made no reductions in public expense with respect to either governmental or non-governmental functions; that such economies, if effected by Seattle, would make many hundreds of thousands of dollars available for the provision of food and supplies for the destitute and indigent of the city; that King county has sources of revenue not yet drawn upon in any manner whatsoever, in that it has not levied any gasoline or other excise or occupational, or other taxes, not a direct charge upon real or personal property, from which hundreds of thousands of dollars for the relief of the destitute and indigent persons and families of King county can be immediately raised.

On June 18, 1932, the superior court sustained the demurrers, appellants elected in open court to stand upon their respective complaints and the court made and entered its formal order sustaining the demurrers and dismissing the action. From this judgment appellants Rummens and Simpson appeal, and join in the submission thereof here. . . '

They assign as errors the sustaining of the demurrers and dismissal of their actions.

"In view of the emergent nature of the subject matter of the controversy, the necessity for its prompt determination, and the great ills that might follow upon delay" (*State ex rel. Porter v. Superior Court,* 145 Wash. 551, 261 Pac. 90), we feel impelled to render as speedy a decision as possible, being governed chiefly by our own statutes and decisions.

This is no new problem, as it is written "For ye have the poor always with you," and has been recognized by our state constitution (Art. VIII, § 7) and statutes, as a legitimate county, or city, duty. The statutory provisions relating to the poor are found in Rem. Comp. Stat., §§ 9981 to 9992, inclusive.

By the first section cited, the board of county commissioners of the several counties of the state are vested with entire and exclusive superintendence of the poor in their respective counties, with the proviso that the section should not be construed as to include any incorporated city or town having by its charter any of the powers enumerated in that section.

Thus, it is manifest that counties are vested with the entire and exclusive superintendence of the poor in their counties, with the exception mentioned, and we have several times so held. *Cochrane v. King County,* 12 Wash. 518, 41 Pac. 922; *Guerin v. Clark County,* 90 Wash. 242, 155. Pac. 1035; *Singleton v. Hamilton,* 90 Wash. 243, 155 Pac. 1057; *Sweet Clinic v. Lewis County,* 154 Wash. 416, 282 Pac. 832. In the *Singleton* case, *supra,* we held that it was apparent from the statutory provisions quoted that the county commissioners of the several counties in this state are vested with the entire and exclusive superintendence of the poor within their respective counties.

"The care of the state for its dependent classes is considered by all enlightened people as a measure of its civilization, and the care of the poor is generally

534

recognized as among the unquestioned objects of public duty." 21 R. C. L. 701.

By the *Sweet Clinic* case, *supra*, it is the absolute duty of a county to provide for poor persons in need of assistance therein.

It being most certainly a governmental function and duty, the duty is no less, but rather the greater, when there are 17,000 families, and in excess of 50,000 poor persons, needing public aid.

The resolution of the board declares that, unless so aided, a grave public emergency exists which may seriously endanger the public health and the preservation of order within King county; that, by reason of the facts recited in the resolution, an emergency exists for the appropriation of $200,000 beyond the statutory debt limit of King county, in addition to the sums provided for in the budget for 1932 for the public welfare department of the county.

The board having made such finding and declaration of immediate emergency, unless it appears that it has acted arbitrarily or capriciously, it is not for the courts to disturb its action. *State ex rel. Porter v. Superior Court, supra,* and cases cited. That case arose under the budget act of 1925, Rem. 1927 Sup., § 3997-6. There, also, it was contended before the board and the lower court that the amount which had been appropriated for the office of the sheriff of the county was amply sufficient if the office were properly and economically administered; that the sheriff knew the facts and yet, totally disregarding the situation, he expended the appropriation in a reckless and extravagant manner; and that, therefore, there was no emergency. Respecting that, we said:

"It is not sufficient to say that the sheriff has been remiss. The legislature can and should provide means for the proper punishment or penalizing of an officer

who needlessly or negligently causes an emergency. If an emergency in fact exists, the county commissioners must so find and must provide funds in order that the necessary functions of the governmental agencies under their control shall continue. Otherwise, we shall have chaos."

The same situation exists in this case, but is much more appalling and exigent. If husbands and fathers of 17,000 families are unable to find food to satisfy the hunger of their families and other bare necessities, although in the midst of plenty, many will be driven to get what they can where they may find it by any means available, or driven to desperate self-destruction. They will not quietly and tamely submit to starvation. The burdens of the taxpayers of the state are grievous, as we well know, and have reached a point which is well-nigh unendurable, but not so grievous as to be hungry, cold and naked, without fault, and seeing helpless women and children in the same state and unable to relieve them.

Appellants place greatest stress upon the terms of Rem. Comp. Stat., § 5605, which reads:

"No taxing district [defined in § 4 of act of 1917, p. 589 (Rem. Comp. Stat., § 5608), as embracing all counties, cities and other municipalities] shall for any purpose become indebted in any manner to an amount exceeding one and one-half per centum of the last assessed valuation of the taxable property in such taxing district, without the assent of three-fifths of the voters therein voting at an election to be held for that purpose, . . ."

And § 5607, being § 3 of act of 1917, p. 589, which reads:

"All orders, authorizations, allowances, contracts, payments or liabilities to pay, made or attempted to be made in violation of this act, shall be absolutely void and shall never be the foundation of a claim

against a taxing district: Provided, that the limitations imposed by this act shall not apply to debts contracted by any taxing district prior to March 1, 1917."

Appellants then emphatically assert that no language could be more unequivocal in declaring that any such warrants shall be absolutely void and shall never be the foundation of a claim against a taxing district.

There is no question in this case of the power of King county to levy taxes, as it is not attempting to do so in excess of the statutory authorization, as was the fact in *Great Northern Railway Co. v. Stevens County,* 108 Wash. 238, 183 Pac. 65, quoted and relied upon by appellants.

We have held that, for the protection of life, liberty and property, and the conservation of peace and good order in the state, governmental function cannot remain in abeyance. *Rauch v. Chapman,* 16 Wash. 568, 48 Pac. 253, 58 Am. St. 52, 36 L. R. A. 407. That, where a county had reached the limit of its indebtedness, it could thereafter issue its obligations for those expenses necessary to maintain its existence. *Duryee v. Friars,* 18 Wash. 55, 50 Pac. 583.

We have also held that municipal corporations, which have less power than counties in this state, have the same right and power in maintaining their existence and sustaining governmental functions. *Hull v. Ames,* 26 Wash. 272, 66 Pac. 391, 90 Am. St. 743; *Gladwin v. Ames,* 30 Wash. 608, 71 Pac. 189; *State ex rel. Taro v. Everett,* 101 Wash. 561, 172 Pac. 752; *McCarthy v. Kelso,* 129 Wash. 121, 223 Pac. 151. Four dissenters in the last cited case did not dispute the proposition that, where purely governmental functions were involved, the municipality was justified in exceeding the statutory debt limit. And in the *Taro* case, *supra,* we held that the courts would not interfere with the discretion of the city authorities in determining

the necessity of increasing the fire department, except for abuse of discretion, when the abuse is so gross that reasonable minds cannot differ thereon.

Under our statutes and decisions, therefore, it being a positive governmental function and duty of the county to care for the poor, the statute emphasized by appellants does not govern. Moreover, the provisions of the budget law, which are quoted in the *Porter* case, *supra,* were enacted later, in 1925, and as all statutes on a given subject must be considered in *pari materia,* the act of 1917 was to that extent modified and amended.

Unquestionably, in the stress of these times, when unemployment is the rule rather than the exception, and has increased immeasurably in this state and region within the last two years, an emergency exists under § 3997-6, *supra.* See, also, *Muskegon Heights v. Danigelis,* 253 Mich. 260, 235 N. W. 83. In that case, it was held, in February, 1931, under a statute of Michigan limiting the borrowing power of cities and towns, except in cases of great calamity, that the existing condition of general unemployment constituted a great calamity.

Concerning the allegations of the amended complaints that there are road district and special river improvement funds amply sufficient to meet the alleged existing emergency that could be diverted by the board for that purpose, and assuming, without deciding, that the board has such power, we consider that a matter for the exercise of its legislative discretion.

Neither are we impressed with the argument of appellants that savings in appropriations could be effected by King county and by Seattle so that ample funds could be obtained during the taxing year to relieve the necessities of the poor of King county. Upon the plainest dictates of humanity, such a condition

538

must be relieved immediately, or in many hundreds of cases it may be too late or useless. Months would necessarily be required to make such savings effective. While the funds could be accumulated, as suggested by appellants, thousands of men, women and children, might die or be driven to crime to relieve their necessities, or to reprisal and disorder.

The judgment is right, and is affirmed.

TOLMAN, C. J., MAIN, BEALS, and MILLARD, JJ., concur.

