[No. 25436.    Department One.    April 3, 1935.]

St. Luke's Hospital, *Appellant*, v. Stevens County, *Respondent*.[1]

*Hamblen, Gilbert & Brooke,* for appellant.

*F. Leo Grinstead,* for respondent.

Tolman, J.—Appellant, as plaintiff, sued to recover upon a claim for hospital services rendered to an itinerant laborer who was taken ill while employed in Stevens county. The case was tried to the court, resulting in a judgment of dismissal. The plaintiff has appealed.

The trial court made findings of fact and conclusions from which we quote:

"That on or about the 15th day of May, 1932, the said Clyde Robinson had been in the city of Spokane,

[1]Reported in 42 P. (2d) 1109.

Washington, about one week, and on or about said date was sent to Stevens county, Washington, near the town of Clayton, to take employment as a woodcutter. That on or about the 26th day of May, 1932, the said Clyde Robinson became sick in said Stevens county, Washington, which sickness developed into a case of pneumonia, and that on or about the 30th day of May, 1932, the said Clyde Robinson was taken by one L. C. Schreck from Stevens county, Washington, to the hospital owned by plaintiff in Spokane county, Washington, for medical aid and treatment. That when he reached said hospital he was in a critical condition. That for the period of approximately thirty days he was given medical care and treatment in said hospital, and he was discharged therefrom as cured on the 30th day of June, 1932.

"That on the 4th day of June, 1932, plaintiff having discovered that the said Clyde Robinson was wholly without means, money or property to pay for nursing and medical care, notified the board of county commissioners of Stevens county, Washington, at Colville, Washington; that the said Clyde Robinson had been admitted to the hospital as an emergency case and that he was without funds to pay for his hospital and medical care, and that plaintiff received no reply to this notice; that the said Clyde Robinson was wholly without means, money or property to pay for nursing and medical care.

"That on the 29th day of August, 1932, plaintiff sent to defendant an itemized bill for the medical care and attention furnished to the said Clyde Robinson in a total sum of $240.20 after the deduction of the usual discount allowed for indigent county cases, and that on the 8th day of September, 1932, defendant notified plaintiff that it assumed no liability for said obligation and declined to pay the same. That on the 1st day of June, 1933, plaintiff filed its itemized claim for said medical care and attention furnished to the said Clyde Robinson in the total sum of $495.90, said claim being duly verified as required by law. That on the 5th day of June, 1933, said claim was rejected by defendant and notice of said rejection was given to plaintiff.

"That no demand was made upon the board of county commissioners of said defendant for medical aid or assistance to the said Clyde Robinson prior to the time of his removal to the hospital of plaintiff in Spokane county, Washington. That the said board of county commissioners had no notice or knowledge of his removal to said hospital prior to the 6th day of June, 1932, and that they never authorized the same. That there are two general hospitals in Stevens county, Washington, in which indigents are given necessary medical care and attention by said Stevens county, that one of said hospitals is the same distance from the town of Clayton, Washington, near which the said Clyde Robinson was employed, as is the hospital owned by plaintiff.

"From the above findings of fact the court makes the following conclusions of law:

"That plaintiff is not entitled to recover in said action, and that the same should be dismissed."

The facts as so found are not now questioned, but it is urged that the trial court erred in its conclusions and judgment.

The only question with which we are now concerned is whether, under the facts, the respondent county is liable and if so, for how much?

The action is based on Rem. Rev. Stat., § 9986 [P. C. § 1698], which reads:

"When any nonresident, or any other person not coming within the definition of a pauper, shall fall sick in any county in this state, not having money or property to pay his board, nursing, or medical aid, it shall be the duty of the commissioners of the proper county, on complaint being made, to give or order to be given such assistance to such poor person as they may deem just and necessary; and if said sick person shall die, then the said commissioners shall give or order to be given to such person a decent burial; and the said commissioners shall make (such) allowance for board, nursing, medical aid, or burial expenses, as they shall

deem just and equitable, and order the same to be paid out of the county treasury.''

This statute places the mandatory duty upon the several counties of providing for the needs of those without means who ''shall fall sick in any county,'' and it is contended that Stevens county is, by the terms of the statute, made liable for the needs of any such person who falls sick in Stevens county.

Undeniably, the man Robinson was a nonresident without means, and he did fall sick in Stevens county. It appears that, at the time of his removal to a hospital, Robinson was a very sick man, perhaps delirious, or more or less unconscious, and that he was then wholly dependent upon the kindness of strangers. The appellant's hospital was as near and at least as available as was the nearest hospital in Stevens county. The good Samaritan who acted appears to have acted in good faith for the purpose of saving the life of the sick man, and probably felt that there was no time to be lost, and that to report the case to the county commissioners of Stevens county and await their order might prove fatal. The fact that the patient was in a critical condition when he arrived at the hospital, supports fully all such inferences.

But the position of appellant is much stronger than what we have just said would indicate. The hospital authorities knew nothing of the case until the patient in a critical condition was presented at the hospital door. To then pause to make inquiry or to debate questions of liability, would have been inhuman, unthinkable and inconsistent with appellant's vocation. Such a course might have resulted in the death of the patient.

Under such conditions, all must agree that the hospital authorities had no choice, but were bound to at

once receive the patient and give him the attention which his condition required. Having done so, the hospital is as much entitled to hold the particular entity upon whom the law casts the liability as it would be if the county commissioners of that particular entity had officially directed the hospital to act.

The case of *Sweet Clinic v. Lewis County,* 154 Wash. 416, 282 Pac. 832, is decisive upon every possible question which might be raised as to the right of the appellant to recover, except only the one question here presented, i. e.: Is Stevens county the county upon which the liability must ultimately fall? In the *Sweet Clinic* case, *supra,* the present question was expressly reserved.

It seems to us that the statute itself by its terms answers the question. The fact of falling sick in a particular county, by the very language of the act, it seems to us, places upon the commissioners of that particular county the duty to provide when complaint is made.

Here the hospital, by prompt notice, made the necessary complaint to the commissioners, and we are convinced that, under the statute and our former decision in the *Sweet Clinic* case, Stevens county is liable.

█ It appears that the first bill rendered was upon the basis of the case being "a county case," or one where the county was liable and was for the sum of $240.20. That amount, we find from the evidence, is just, fair and reasonable; and the appellant, having itself recognized the custom of fixing a special and a low rate for county cases, should not now be permitted to depart from that custom.

The judgment is reversed, with directions to enter judgment against Stevens county for $240.20, plus interest at the legal rate from June 5, 1933, the date

when the bill was formally presented to the county commissioners, and for costs.

MILLARD, C. J., MAIN, BEALS, and GERAGHTY, JJ., concur.