## Mercy Hospital v. City of Pittsburgh

*Thomas P. Mulvaney, Walter T. McGough* and *Reed, Smith, Shaw & McClay,* for plaintiff.

*J. Frank McKenna,* City Solicitor, and *Thomas E. Barton,* Assistant City Solicitor, for defendant.

WEISS, J., November 18, 1957.—Plaintiff, Mercy Hospital, filed this suit in assumpsit to recover from defendant, City of Pittsburgh, for emergency medical care and hospital treatment furnished to persons brought to the hospital for care by police officers of the City of Pittsburgh.

Defendant, City of Pittsburgh, filed preliminary objections in the nature of a demurrer alleging that plaintiff had not set forth a cause of action because:

1. It has pleaded no contract executed by the proper officers of the City of Pittsburgh with the Mercy Hospital under which the city assumes to pay for the hospital care of the persons mentioned in the complaint.

2. The police officers of the City of Pittsburgh are not agents of the city with authority to bind the city for payment for hospital care of persons mentioned in the complaint.

3. The law of the Commonwealth of Pennsylvania does not impose upon the City of Pittsburgh the duty to pay for any hospital care for indigent persons found by police officers to be in need of such care and taken to the hospital by them.

Counsel for plaintiff by praecipe placed this case upon the argument list, which now comes for disposition before this court en banc.

## Question Involved

Does plaintiff set up a cause of action? And should defendant's demurrer be sustained, or dismissed?

## Discussion

In this action Mercy Hospital seeks to recover for "emergency medical care and hospital treatment" furnished to persons seriously injured or wounded and brought to the hospital by police officers of the City of Pittsburgh.

The City of Pittsburgh filed preliminary objections in the nature of a speaking demurrer. A speaking demurrer admits all facts pleaded in the complaint, and for the purpose of this argument, the admitted and controlling facts are:

1. At the specific instance and request of police officers of the City of Pittsburgh, Mercy Hospital has provided medical attention and hospital care to certain *injured, wounded or sick residents* of the city.

2. In each instance the police officers were acting within the scope of their employment by the city and with the *authority, knowledge and approval of their superiors.*

3. Almost all the persons cared for by Mercy Hospital were indigent and without funds.

4. In each instance an *emergency* existed so as to require immediate medical or surgical attention or hospital care to avoid serious *physical damage or death.*

5. Mercy Hospital furnished the medical and hospital care with the expectation that it would be compensated therefor by the city.

6. The city, through its officers, agents, employes and elected officials, *knew* that Mercy Hospital was furnishing medical and hospital care in these *emer-*

*gency* situations and has received and retained the benefit thereof.

7. The charges stated in the complaint are fair and reasonable charges for the services performed.

8. Despite demands, the city refuses to pay the amount due or any part thereof.

In its preliminary objections the city admits these allegations in plaintiff's complaint but sets forth the following objections:

1. No act of the city caused the patients to be ill or injured.

2. No *written contract* was executed before the emergency treatment was provided.

3. The police officers had no authority to bind the city.

4. The law does not impose upon the city a duty to pay for the care of indigent persons brought to the hospital in *"emergency situations"*.

We do not believe any of these objections to be valid and we will discuss them seriatum.

This is an action of assumpsit in which the complaint avers a series of *express requests* by police officers of the City of Pittsburgh for the furnishing of medical and hospital attention to *critically ill or wounded persons*. As a matter of common law, it is axiomatic that one who furnishes services at the express request of another and with the expectation of being paid therefor is entitled to recover the reasonable value of those services.

That is exactly what the hospital seeks to recover in this proceeding.

The city strongly relies upon the Act of March 7, 1901, P. L. 20, known as the Charter Act, and its amendments, which provides as follows:

"All contracts relating to city affairs shall be let to the lowest responsible bidder, after reasonable notice. When the contract exceeds five hundred dollars,

such notice shall be by advertisement; when less than that amount, or when purchased at public sale, advertisement may be dispensed with. Every contract shall be let in the manner prescribed by the council of said city, and shall be countersigned by the city controller. All bids shall be filed with the city controller, and shall be opened publicly in the manner prescribed by the council of said city at a time and place to be designated in the advertisement or notice to bidders, and the figures stated to those present. No contract shall be let until council has passed an ordinance providing for the letting of the same": Art. XV, sec. 1, 53 PS §23301.

Another section of the same act provides as follows: *"Execution of contracts.*

"All contracts shall be in writing, signed and executed in the name of the city by the Mayor and head of the proper department. No contracts shall be entered into or executed directly by the councils or any committee thereof": 53 PS §23302.

The city strongly argues in its preliminary objections that its *public officers executed* no written contract for the furnishing of services by Mercy Hospital in the instances involved, but careful reading of the complaint discloses that in each case for which recovery is sought by plaintiff, a *seriously sick or wounded person* was rushed to the *emergency doors* of the hospital by the police. Most all of these cases occurred during the night or early morning hours. The city contends that the hospital should refuse to provide the immediate attention necessary and requested by the police officers until a formal written contract was executed by which the city would agree to pay the expense of treatment.

It is unthinkable for this court en banc to subscribe to such a principle in this modern twentieth century.

The law of this Commonwealth tolerates no such absurdity.

While normally under the statutes, the Charter Act hereinbefore cited, contracts relating to city affairs should be let to the lowest possible bidder and must be in writing, the law of Pennsylvania makes a *clear exception* to such statutory provision where, as here, an *emergency is involved*, to which all parties are in accord. What greater *emergency* can exist than a *person shot* or one seriously wounded or injured, as set forth in plaintiff's complaint and a police officer of the city in his duty as a guardian of the public safety rushing to the emergency ward of a hospital seeking to save a human life. Certainly in our opinion no formal or written contract is necessary to bind a municipality to the payments of reasonable cost of services rendered: Maguire v. Philadelphia, 66 Pa. Superior Ct. 300; Upper Darby Twp. v. Ramsdell Construction Co., 51 D. & C. 246; Automatic Voting Machine Corp. v. Witkin, 64 D. & C. 171.

Our review and analysis of the case of Maguire v. Philadelphia, supra, presents a somewhat analogous situation (emergency) where no written contract was required. The Superior Court said, at page 304:

"The situation presented an emergent necessity, which the director was obliged to take care of and it was adjusted in the interest of the city. The court refused a motion for a nonsuit at the instance of the city and directed the jury as follows: 'The only defense in this matter is a technical one, and a technical one which I do not think is well taken. It is admitted that the work was done, and that the prices charged are legitimate. And it is quite obvious that the work was one of public necessity, involving public health. Unless this garbage had been collected on that day and was kept collected right along, unless the law permitted that we would be in a pretty state of affairs. I direct

you to find a verdict for the plaintiff for the amount to be handed to you.' "

We are therefore in accord that the absence of a formal written contract for the services rendered by the hospital is no bar to this action and the second objection of the city should be overruled.

The city's third ground for demurrer is that the police officers did not have authority to request the hospital to furnish the services.

Plaintiff's complaint avers, as a matter of fact, that the police officers of the city *did* have authority from the city to request the furnishing of services by the hospital and that they did so at the instruction of, or with the knowledge or approval of, their superiors. The city did not move for a more specific pleading and must accept these well-pleaded facts as admitted on this argument: Lackawanna Mills v. Scranton Gas and Water Co., 277 Pa. 181, 120 Atl. 814 (1923) ; In re Pfeil's Estate, 287 Pa. 21, 134 Atl. 385 (1926) ; Langer v. Superior Steel Corp., 105 Pa. Superior Ct. 579, 161 Atl. 571 (1952) ; Byers v. Ward, 368 Pa. 416, 84 A. 2d 307 (1951) ; Henzel v. Patterson Bldg. & Loan Assn. (No. 2), 128 Pa. Superior Ct. 531, 194 Atl. 683 (1937).

It is equally well established that allegations of agency and of the agent's authority are allegations of fact and not conclusions of law: Lynch v. Wolfinger, 163 Pa. Superior Ct. 405, 62 A. 2d 95 (1948) ; Heather v. New Sparton Bldg. & Loan Assn., 126 Pa. Superior Ct. 245, 190 Atl. 659 (1937) ; Franklin Sugar Refining Co. v. Greenberger & Co., 3 D. & C. 92 (1922).

In Franklin Sugar Refining Co. v. Greenberger & Co., supra, a case involving defendant's motion to strike plaintiff's statement of claim on the grounds that plaintiff's allegations of agency and the agent's authority were conclusions of law, the court stated, at page 93:

610

"In the case at bar, when the plaintiff stated, in paragraph 4, that the 'said broker (Quackenbush & Son) was duly authorized by defendant, to the knowledge of plaintiff, to make on behalf of the defendant the contracts hereinafter referred to,' and when the plaintiff stated, in paragraph 9, that 'plaintiff and defendant each respectively approved and ratified the action of broker in effecting said contracts,' the plaintiff set forth alleged actual facts, and the pleadings sufficiently apprised the defendants of what in this aspect of the case they have to meet.

"To say that an act was authorized, or that it was ratified, is a definite statement of facts, though these facts rest on other facts and depend on other facts for their proof. Either averment is as much a statement of facts as it would be to say that the plaintiff is a corporation, or that a man and woman joined as plaintiffs in a trespass action are husband and wife."

And quoting Franklin Sugar Refining Co. v. J. P. Hollinger & Co., 2 D. & C. 754, the court stated, at page 756:

"Nor do we think it was necessary to specify the terms of the alleged authority given to the broker. It was sufficient to aver that he had authority and did make the contracts. If the plaintiff fails to prove authority, its case must necessarily fall. These are issues to be determined upon the trial."

It is thus improper for the city to raise on demurrer the issue of the police officers' authority. If this is the theory of the city's defense, *it should deny the authority in its answer*. Faced with such denial, it will then be plaintiff's burden to support the averments of authority contained in the complaint. *If plaintiff fails to support its allegata with probata, its case will fall.* However, this is a matter to be determined at the trial after the reception of evidence and is not a proper subject for demurrer.

The city's third objection is without merit and is therefore dismissed.

The city's fourth and final objection is that the law of Pennsylvania does not impose a duty upon the city to pay the hospital for the services it has rendered.

As we previously stated, it is unthinkable to us that the law would prohibit a municipality in this modern era from providing for the care of its criminals and vagrants who are sick or wounded, but whether such a duty exists is not before this court in the consideration of defendant's preliminary objections. The sole issue before us is whether the city is liable for services contracted (implied) by its authorized agents (police officers), with the Mercy Hospital, especially in *emergency* services rendered by the hospital.

We cite a somewhat similar Illinois case, County of McLean v. Humphreys, 104 Ill. 378. This is a case involving reimbursement for expenses incurred in the commitment of an infant female to the Industrial School for Girls pursuant to an order of court. The county refused to reimburse plaintiff, and after judgment for plaintiff, the county appealed.

The Supreme Court of Illinois held that the county was liable for reimbursement, and with respect to the duty of the county, the court stated:

"It is the unquestioned right and imperative duty of every enlightened government, in its character of *parens patriae*, to protect and provide for the comfort and well being of such of its citizens as, by reason of infancy, defective understanding, or other misfortune or infirmity, are unable to take care of themselves. The performance of this duty is justly regarded as one of the most important of governmental functions, and all constitutional limitations must be so understood and construed as not to interfere with its proper and legitimate exercise": 104 Ill. at 383.

While we can find no Pennsylvania precedent, plaintiff submits the case of St. Luke's Hospital v. Stevens County, 181 Wash. 360, 42 P. 2d 1109, in which case a county was held liable for hospital services rendered to a nonresident itinerant laborer who was taken ill while employed in the county, notwithstanding hospitals were available in such county, where at the time of removal the laborer was in critical condition and delay in administering aid might have been fatal. The court had this to say, at page 363:

". . . But the position of appellant (hospital) is much stronger than that we have just said would indicate. The hospital authorities knew nothing of the case until the patient in a critical condition was presented at the hospital door. To then pause and make inquiry or to debate questions of liability, would have been inhuman, unthinkable and inconsistent with appellant's (hospital's) vocation. Such a course might have resulted in the death of the patient. Under such conditions, all must agree that the hospital authorities had no choice, but were bound to at once receive the patient and give him the attention which his condition required. Having done so, the hospital is as much entitled to hold the particular entity upon whom the law casts the liability as it would be if the county commissioners of that particular entity had officially directed the hospital to act."

Similarly, in Crouse Irving Hospital v. City of Syracuse, 128 N. Y. S. 2d 433 (1954), (Aff'd. 308 N. Y. 844, 126 N. E. 2d 179), a prisoner had been wounded by city police officers during an arrest and was taken by police officers to plaintiff hospital for emergency treatment. The court held that defendant city was liable for the cost of medical treatment because an implied contract to pay arose, saying as follows, at page 435:

"It is difficult to understand how the defendant city can avoid liability. The services having been rendered De Pasquale at the insistence and request of authorized agents of the city, an implied contract to pay for these services arose if there was a legal duty upon the city to provide the attention: Crane v. Baudouine, 55 N. Y. 256; McGuire v. Hughes, 207 N. Y. 516 . . . The liability follows the duty. There seems to be no question of the latter, Eddy v. Village, [etc.,] 54 N. Y. S. 800; Dunham v. Village, [etc.,] 303 N. Y. 498; and we find the judgment against the City of Syracuse was proper."

We believe, therefore, that the city has the power to contract for hospital care for its indigent sick and wounded. The complaint avers that such contracts were made by duly authorized officers of the city. In each case an emergency existed, and accordingly, no formal or written contract was necessary. We therefore dismiss the defendant's fourth objection.

## Conclusion

From the discussion set forth in this opinion, we believe that plaintiff's complaint in assumpsit against the City of Pittsburgh sets forth a good cause of action under our law. The only real issues in this proceeding are issues of fact which must be determined at the trial of this case. It will then be the burden of plaintiff to support the averments of authority contained in the complaint. The fact that plaintiff is a hospital makes no difference to the court; if the probata does not support its allegata, the case will fail. However, this is a matter to be determined at the trial of this case and not a proper subject for demurrer.

Defendant's preliminary objections are hereby dismissed and defendant is permitted 20 days to file its answer on the merits.

*Order*

And now, to wit, November 18, 1957, following argument and consideration of the briefs submitted, it is hereby ordered and decreed that defendant's preliminary objections be and are hereby dismissed and defendant is hereby directed to file its answer within 20 days from the date hereof.

Eo die exception is hereby granted to defendant and bill sealed.